## GUY *v.* DONALD.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 90.   Argued November 8, 1906.—Decided December 3, 1906.

While one carrying on private business may be answerable for the torts of another to whom he entrusts part of the work, he is not answerable for the torts of one whom he cannot select, control or discharge.

The members of a pilot association recognized by state statute and to which every pilot licensed by the State belongs, are not to be held liable as partners to owners of piloted vessels for the negligence of each other,

because the association collects the fees for pilotage and after paying
certain expenses distributes them to those on the active list according
to the number of days they have been on duty.    So *held* as to Virginia
Pilot Association.
135 Fed. Rep. 429 reversed.

THE facts are stated in the opinion.

*Mr. D. Tucker Brooke* and *Mr. R. C. Marshall* for appellants:

While for a long time participation in common loss and
profits of a common business was one of the most conclusive
tests of copartnership relations, yet the later and best opinion
now is that this is not necessarily so.    The rule now is that
the question of partnership or no partnership is not to be
settled by arbitrary tests; that to attempt to do so is mis-
chievous, resulting in error.    In the absence of conclusive
tests the essential element of copartnership is that the parties
are mutually principals of and agents for each other. *Beecher*
v. *Bush,* 45 Michigan, 188; Meachem's Elements of Partner-
ship, §§ 18 and 63.

In the case of pilot associations the individual pilots are
not, and under our statutes cannot be, each the agents of the
other members.

Our entire system of statutes on this subject show that the
individual pilots are quasi-public officers; they derive their
authority not from the association, but from the State; their
service is personal, and in its performance they represent only
themselves, individually, with a responsibility only to the
State; their right to compensation is given to them individu-
ally by statute, as officers of the State; their fees are fixed by
statute, as the fees of other state officers are; and there can be
no copartnership in state officers.

As the parties who are sought to be held as partners cannot,
under the law, occupy the relation each of principal for himself
and agent for his associates (because each renders only a per-
sonal service), no presumption of copartnership, arising from
the participation in the profits of the concern, can exist, be-

cause the relation of partnership *inter sese* cannot legally exist between them.

These pilots are quasi-public officers, or at least invested with a personal trust, and, this being so, they cannot occupy the relation of principals for themselves and agents for their associates (without which, a copartnership cannot exist), for, under the principles of the common law, it is against public policy for a copartnership to exist in public offices. *Jones* v. *Perchard,* 2 Esp. 507; *Canfield* v. *Hard,* 6 Connecticut, 180; see *Gaston* v. *Drake,* 1 Nevada, 175; *Seely* v. *Back,* 42 Missouri, 143; *Bowen* v. *Richardson,* 133 Massachusetts, 293; *Gould* v. *Kendall,* 15 Nebraska, 549; *Warner* v. *Griswold,* 8 Wend. 665; *Wolcott* v. *Gibson,* 51 Illinois, 69.

The fact that the State imposes a "personal" obligation to perform the duty of pilotage affects the legality of such a partnership, in that it makes them public officers, and so renders it impossible to form a legal partnership.

It is the personal element which distinguishes the case of the pilot from that cited of a railroad company or common carrier. A corporation cannot, from the nature of things, be a public officer; hence the cases are not analogous.

The pilot association pleads no wrong in its defense, since · it denies the existence of the partnership and cites the illegality only to show that, had it desired, it could not have formed one. Had it claimed to be an "illegal partnership," then its illegality might not have been set up.

If a court may take judicial cognizance of the statute laws of the State, it may also take cognizance of the rules and regulations of a body created by those statutes, by them invested with the power of making rules and regulations supplementary to the provisions of the statutes.

*City of Dundee,* 103 Fed. Rep. 696; *S. C.,* 108 Fed. Rep. 679, in which the exact question involved here arose, and in the same way, upon the Pennsylvania pilot laws, which are identical with those of Virginia. See also *Mason* v. *Ervine,* 27 Fed. Rep. 459.

*Mr. Robert M. Hughes* for appellee:

There is such a community of profits and losses shown as to constitute the Virginia Pilot Association a partnership. *Fleming* v. *Lay,* 109 Fed. Rep. 952; *Brown* v. *Higginbotham,* 5 Leigh, 583; *Keasley* v. *Codd,* 2 C. & P. (12 E. C. L.) 408; *Davison* v. *Holden,* 55 Connecticut, 103. As to liability of members of unincorporated associations, and of corporations whose organization was absolutely void, see *McGovern* v. *Robertson,* 5 L. R. A. 589; *Kaiser* v. *Bank,* 56 Iowa, 104; *Jones* v. *Murphy,* 93 Virginia, 214; *Robbins* v. *Butler,* 24 Illinois, 387, 426; *Railway Co.* v. *Pearson,* 128 Massachusetts, 445; *Frost* v. *Walker,* 60 Maine, 468; *Kramer* v. *Arthur,* 7 Pa. St. 165; *Ricker* v. *Trust Co.,* 140 Massachusetts, 346, 348.

It is no answer to this that the pilots did not intend to form a partnership. Men always intend the legal consequences of their own acts, and if their acts constituted a partnership, they cannot be heard to say that such was not their intention. 1 Lindley on Part., 5th ed., 11; *Fleming* v. *Lay,* 109 Fed. Rep. 955, 956. See, also, *Davison* v. *Holden,* 55 Connecticut, 103; Meachem on Part., § 43, p. 31; *Jones* v. *Clifford,* 5 Florida, 510.

Even if the pilots are public officers this does not affect the question; they are not such public officers as cannot go into partnership. While a public officer cannot form a partnership so as to allow his partner to perform any of his duties, which, to a certain extent, are personal, this does not prevent two public officers from going into a partnership, each performing his own duties and merely dividing the profits. There is nothing personal in the act of the pilots. The Virginia statute requires the master of a vessel to take the first one that offers. Hence, so far as the ship at least is concerned, she has not the opportunity of any selection as among them. They are classified according to length of service, and all are supposed to be equally competent.

Independent of this general principle, the Virginia law recognizes the right of pilots to form a partnership. Act of

1775, 6 Hen. Stat. 490; acts of 1792 and 1802, 1 Va. Code, 1803, 240 and 417; act of 1819, Rev. Code, 1819, 121. And see Code of 1849, and present Code, § 1960.

Even if the pilot association is an illegal partnership, this can only be set up as among themselves and is no answer to a suit against them by a third party. *Brett* v. *Beckwith*, 3 Jur. N. S. 31; Meachem on Part., § 20, p. 16; *Hale* v. *Hale*, 4 Beav. 369; *United States* v. *Baxter*, 46 Fed. Rep. 350.

The members of such a partnership are liable for each other's torts, if in furtherance of the objects of the association, and if the fruits of their labors are received by the association. *Hyrne* v. *Erwin*, 23 S. Car. 226; *Fleming* v. *Lay*, 109 Fed. Rep. 952; *Mellors* v. *Shaw*, 1 Best & S. (101 E. C. L.) 437; *Ashworth* v. *Stanwix*, 3 C. & E. (107 E. C. L.) 700; *United States* v. *Baxter*, 46 Fed. Rep. 350; *Cobb* v. *Abbott*, 14 Pick. 289; *Strang* v. *Bradner*, 114 U. S. 555.

The pilots, if not a partnership, are jointly liable.

This is well settled by a number of decisions, as in case of joint owners of stage coaches. *Champion* v. *Bostwick*, 18 Wend. 174; *Moreton* v. *Harden*, 4 B. & C. (10 E. C. L.) 223; *Railroad Co.* v. *Ross*, 31 N. E. Rep. 412; *Cobb* v. *Abbott*, 14 Pick. 289; *Steel* v. *Lester*, L. R. 3 C. P. D. 121; *Connelly* v. *Davison*, 15 Minnesota, 428, 519.

Mr. Justice Holmes delivered the opinion of the court.

This case comes before us on a certificate from the Circuit Court of Appeals. It is a libel brought by the owners of a steamer against the members of the Virginia Pilot Association, and seeks to hold them all liable for the alleged negligence of Guy, one of their number. For the proceedings in the District Court see 127 Fed. Rep. 228; 135 Fed. Rep. 429. The negligence occurred when Guy was acting as pilot of the steamer and led to a collision, for which the owners of the steamer paid damages to the other vessel in order to end a suit. The questions certified are (1) whether the members of

the association are partners on the facts set forth; (2) whether, if partners, they are liable to owners of piloted vessels for the negligence of each other; (3) whether, if not technically partners, they nevertheless are so liable.

The facts appear in the third article of the libel, which was excepted to, and in answers to interrogatories. They are as follows: The defendants are a voluntary, unincorporated association. By their agreement they take turns in boarding vessels required by law to take a pilot, and the fees, which otherwise would be paid to the pilot that boarded the vessel, are paid, except in cases of national vessels and disputed bills, to the association upon bills made out by it, and go into a common fund, from which, the association pays the expenses of the business, including office rent. At the time of the accident the net profits were divided according to the number of days the several pilots were upon the active list. The constitution and by-laws of the association are exhibited and will be referred to. It is proper to add here a few words as to the Virginia law. By the Code of 1887 a Board of Commissioners is instituted to examine persons applying for branches as pilots; and the commissioners are given "full authority to make such rules as they may think necessary for the proper government and regulation of pilots licensed by them." § 1955. There are details as to the qualification and classification of pilots and their duties, including a requirement, as to boats, of the pilot "or the company to which he belongs." § 1960. Acting as pilot without authority is punished. § 1963. Certain vessels are required to take the first pilot that offers his services or to pay full pilotage. § 1965. See § 1976. The amount of pilotage is fixed. § 1969. A personal liability is imposed for the amount, and it is to be noticed that it is a liability to the individual pilot employed. § 1978. The pilot's right to collect his account is fortified by a penalty. § 1979. The Board of Commissioners is authorized to decide any controversy between licensed pilots or between a pilot and the master, owner, or consignee of a vessel, and to enter judgment,

which, if for money, may be collected by a sheriff, etc. § 1980. But a judgment of suspension against a pilot is limited in general to between one and twelve months. § 1981. And the board cannot decide upon the liability of "a pilot" to any party injured by his negligence. § 1982. Pilots demanding or receiving more or less than their lawful fees are subjected to a forfeiture. § 1985. And certain further duties are prescribed.

The rules of the Board of Commissioners provide for the appointment by them of a supervisory board from the Pilot Association, to report to the President of the Board of Commissioners all cases of insubordination, breach of rules, etc., or any misdemeanor, afloat or on shore, on the part of any member of the association. A pilot desiring to go off duty for five days or longer is required to apply to the Board of Commissioners. Suspensions, by whomsoever ordered, are to be reported within twenty-four hours to the president of the board, and are to be acted upon by the board. All pilots are required to look out for their turns, and each pilot is held responsible for whatever turn he may hold upon the list, officers being prohibited from having anything to do with the swapping of turns. It will be seen that the rules of the board, made under the authority of this statute, recognize the association, as does the code, more vaguely, in § 1960, quoted above. The rules also recognize the substitution of turns for the free competition of which there are traces in the code. The rules tacitly assume that every pilot is a member of the association. All punishment and suspension is in the hands of the board, except, as may be added here, that the by-laws of the association impose a fine of ten dollars for a first violation of the rules of the association, of twenty dollars for a second offense, and provide that a third shall be reported to the Board of Pilot Commissioners. Thus substantially the whole government of the Association is in the hands of the Board.

The questions certified very properly go beyond the question

of the existence of a partnership. As long as the matter to be considered is debated in artificial terms there is danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied. The substance of the case is this: A man who is responsible before the law is alleged to have committed a tort. It is proposed to make other men pay for it who not only have not commanded it or any act of which it was the natural consequence, but who would have prevented it if they could, and who have done what they could to prevent it, so far as the qualifications and employment of the pilot were not taken out of their hands by law. Why they should have to pay is the problem recurring through agency in all its forms, and whatever may be thought of some of the reasons that have been offered when the obligation has been imposed, it is certain that something more and better must be found than that the defendants divide the pay for the work that they have done, or that it is a convenience to the party aggrieved to discover a full purse to which to resort.

Whether the ground be policy or tradition, such a liability is imposed, as we all know, in many cases. When a man is carrying on business in his private interest and entrusts a part of the work to another, the world has agreed to make him answer for that other as if he had done the work himself. But there is always a limitation. It is true that he is not excused by care in selection or orders sufficient to secure right conduct, if obeyed. But when he could not select, could not control, and could not discharge the guilty man, he does not answer for his torts. As a familiar instance, the servants of an independent contractor are not the servants of the contractee. The liability of a vessel when in the hands of a compulsory pilot is not put upon the ground that the pilot is the agent or servant of the owners, and, therefore, does not bear upon the question. *The China,* 7 Wall. 53. Now, we are not curious to inquire what form of test shall be accepted as

the most profound for the existence of a partnership when considering liability for debts; but it is plain that when we are considering a liability for torts under the circumstances supposed no stricter or different criterion ought to be applied than in those cases where agency is, the admitted ground. The rule, however stated, presses to the verge of general principles of liability. It must not be pressed beyond the point for which we can find a rational support.

So far as appears, the Virginia Pilot Association had no one of the three powers which we have mentioned. Seemingly it could neither select nor discharge its members, as certainly it could not control or direct them in the performance of their duties as pilots. To take the last first, it is quite plain that the Virginia code contemplates a bond of mutual personal liability between the master of a vessel and the pilot on board. If we imagine such a pilot performing his duties within sight of the assembled association, he still would be sole master of his course. If all of his fellows passed a vote on the spot that he should change and shouted it through a speaking trumpet, he would owe no duty to obey, but would be as free as before to do what he thought best. Then as to the selection of members, there is no indication of any in the code, the rules of the board, or the constitution and by-laws of the association. Nothing is said about membership, and the implication is plain that a condition of the association being permitted by the board to exist is that every pilot belongs to it. Probably, while it exists, a pilot scarcely would find it possible to compete from the outside. It is still plainer that the only provision for expulsion is that which would follow upon a pilot's being deprived of his license. The association has no power over that.

All that there is upon which to base a joint liability is that the pilots, instead of taking their fees as they earn them, accomplish substantially the same result by mingling them in the first place and then, after paying expenses, distributing them to those on the active list according to the number of

days they respectively have been there. Apart from the possible slight difference between the proportion of days on the active list and days of active service, the case is the same as if each pilot kept his fees, merely contributing to keep up a common office from which his bills might be sent out and where a few details of common interest could be attended to. In the latter case this suit hardly would have been brought. The distinction between it and the one at bar is not great enough to justify a different result. See *The City of Dundee,* 108 Fed. Rep. 679, 684; *S. C.,* 103 Fed. Rep. 696.

*The second and third questions certified are answered No.*