## THE GRIFFDU. THE ELDENA. CHARLES NELSON CO. v. UNITED STATES.

District Court, S. D. Texas, at Galveston.
April 12, 1928.

No. 1284.

1. **Pilots** ⟨⟩**16—Master's failure to drop anchor, according to his suggestion, accepted by pilot, did not relieve pilot from liability for collision proximately caused by his fault.**

Master's failure to let go anchor, according to his suggestion, accepted by pilot, *held*, not a refusal to obey latter's order, so as to relieve pilot from liability for damages by collision of which his fault was proximate cause.

2. **Collision** ⟨⟩**108—Master's failure to drop anchor in extremis cannot be held fault for collision due to speed with which pilot attempted turn.**

Master's failure to let go anchor, according to his suggestion, accepted by pilot, while in extremis, because of speed with which pilot attempted to make turn in face of heavy tide, cannot be *held* fault for collision.

3. **Pilots** ⟨⟩**2½—Pilots' association held not liable for damage by collision due to fault of pilot, who was public officer, appointed and responsible individually.**

Pilots' association, owning pilot boats, managing collections, and making rules for handling business for protection of all members, *held*, not liable for damage to ship by collision due to fault of pilot, who was public officer, appointed and responsible individually.

In Admiralty. Libel by the Charles Nelson Company, as owner of the steamship Griffdu, against the United States, as owner of the steamship Eldena, in which the United States filed a cross-libel and impleaded C. R. Megee and the Galveston-Texas City Pilots' Association. Decree for libelant, and for the United States against impleaded defendant Megee.

Lockhart, Hughes & Lockhart, of Galveston, Tex., for libelant.

Jas. B. & Chas. J. Stubbs, of Galveston, Tex., for cross-libelee.

H. M. Holden, U. S. Dist. Atty., and Howell Ward, Asst. Dist. Atty., both of Houston, Tex., for the United States.

HUTCHESON, District Judge. This is a libel to recover damages caused by the act of the Eldena in colliding with the Griffdu while she was at anchor in the anchorage grounds off Bolivar Roads.

The evidence establishes clearly that the collision and consequent damage to the Griffdu was the fault of the Eldena in colliding with her, and that the Griffdu was wholly without fault. It follows that libelant should have a decree fixing liability, and that the United States should recover nothing on its cross-libel.

The disputed questions in the case arise out of the issues tendered on the petition of the United States, impleading C. R. Megee and the Galveston-Texas City Pilots' Association, and the answers thereto made by Megee for himself, and by H. H. Haden answering for the Galveston-Texas City Pilots' Association. These issues are:

(1) That the collision was due to the negligence and improper management of Megee, the pilot who was in charge of the ship at the time of the collision.

(2) That Megee was acting for himself and for the partnership, Galveston-Texas City Pilots' Association, of which he was a member, in conducting said pilotage, and that not only Megee, but the partnership, was liable to the Eldena for the damages caused by and to the Eldena.

The impleaded defendants reply: (1) That Megee was not negligent; but (2) if he was, that he alone must answer for that negligence, since in doing what he did he acted individually, and as a public pilot, and in no sense as the agent or representative of the association or any of its members.

[1, 2] The pilot Megee admits that, if he was at fault, the law would impose liability upon him (Sideracudi v. Mapes [D. C.] 3 F. 873; The Dora Allison [D. C.] 213 F. 646), but resists the claim upon the facts that he was at fault, declaring that he was merely assisting the master of the ship; that he did advise the master to let go his anchor; that this advice was refused; and that, had the advice been taken, the injury would not have occurred. He relies on authorities, of which The City of Canton, Jure v. United Fruit Co. (C. C. A.) 6 F.(2d) 6, is a good illustration, for the proposition that, if the master of the ship was himself negligent in the proper navigation of the ship, that negligence, and not his own, is the proximate cause of the injury.

I have carefully considered the evidence in the light of this contention, and agree with the United States that the proximate cause of the collision was the fault of the pilot, and that the master's position about the anchor cannot, under the circumstances, be taken as a refusal to obey the order of the pilot, but must be taken merely as a suggestion made by him for the consideration of the pilot, which suggestion the pilot heard and accepted. Besides, at the time the letting go of the anchor was suggested, the navigators were in extremis, and it will not do to fix the fault for the collision at the door of the anchor, when the real fault plainly appears to have

been the speed with which, in the face of a heavy tide, the pilot attempted to make his turn.

I am therefore of the opinion that the United States must have its judgment against the pilot for the damages which it has suffered, and which it will have to pay because of the collision.

[3] On the other point made by the United States, that it should have judgment against the Galveston-Texas Pilots' Association, I do not agree with them. Passing the question, not without difficulty, that the Galveston-Texas City Pilots' Association, if a partnership, is not an entity capable of being sued, and that none of the persons claimed to be partners have been sued herein, and treating the answer of Haden, for the association, as bringing into court the members of that association, I think it perfectly clear that Megee was not in any sense a representative of or an agent for the association, in doing the things which caused the collision.

The Supreme Court, in Guy v. Donald, 203 U. S. 403, 27 S. Ct. 63, 51 L. Ed. 245, has, I think, broadly denied the contention of the United States made here. That decision did not, as respondent contends, turn upon the question of the voluntary or involuntary character of the association. It turned upon the primary and controlling consideration that no member of the association could control or direct any other member of it in the performance of his duties as pilot. It turned upon the entire absence there, as here, of any feature of joint management and control of a business or enterprise.

There, as here, each pilot was a public officer, appointed individually, responsible individually. The only collective thing about the action was the owning of the boat, and the management of their collections through a secretary, together with the making of rules for the handling of business for the protection of them all. That that case did not turn upon any precise interpretation of the facts, but upon the broad principle that the very nature of the association prevented it from being a partnership, is made plain in the citation to The City of Dundee, 108 F. 679, wherein the Circuit Court for the Third Circuit declares:

" 'It was and is an association inter sese, and its objects are limited to the management of its pilot boats, and the division of the moneys received from its members, according to their respective shares, as set forth in its rules. It has no power to contract for pilotage service. The pilot offers himself and serves in his individual capacity, and is paid

in that capacity. He has no power to bind all or any of his associates; his contracts, his acts of omission and commission, not relating to the purposes of the association. He is not engaged in the business of the association, but is a licensee of the states of Delaware and Pennsylvania respectively, and is governed by the laws of said states as to his conduct and acts as pilot.' No contracts of pilotage are made with this association, and no pilot, in conducting a vessel through the bay and river Delaware, is in any wise acting as agent of such association."

The Joseph Vaccaro (D. C.) 180 F. 272, was a peculiar case, where the attractive principle of making one hand wash the other produced a decision which I believe is out of line with the authorities. There the injury was to the pilot boat, in which the pilot, navigating the ship sought to be held for the damage, had a share or interest. It seemed to Judge Foster wholly inequitable that the ship which had caused the damage through the fault of an owner of the pilot boat should make the pilot whole for the very damage which he himself had caused. He therefore looked kindly upon the claim of agency and dismissed the libel, whereas he should have, I believe, found the Vaccaro guilty of fault, and bound her to pay, recognizing, however, her right to recover against the pilot responsible for the collision and impounding his share in the boat to pay the damages which he had caused.

Let a decree, then, go for the libelant for its damages, and for the United States against the impleaded defendant Megee only, for the damages sustained by the Eldena and for the amount which it may be found and compelled to pay to the Griffdu.