## CITY OF LOS ANGELES v. STANDARD TRANSP. CO. et al.

### THE LEBEC.

### THE SEEKONK.

Circuit Court of Appeals, Ninth Circuit.
May 27, 1929.

No. 5700.

Jess E. Stephens, City Atty., Clyde M. Leach, Asst. City Atty., and Joseph T. Watson, Deputy City Atty., all of Los Angeles, Cal., for appellant.

A. L. Weil, of San Francisco, Cal., for appellee Standard Transp. Co.

Farnham P. Griffiths, Russell A. Mackey, and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for appellee Wm. Cramp Ship & Engine Bldg. Co.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. On the morning of March 9, 1927, a collision occurred between the motorship Seekonk and the steamship Lebec in the inner Los Angeles harbor. The Seekonk entered the inner harbor from without and was proceeding in a northerly direction to slip 1, or berth 157. The Lebec, after making the turn in the turning basin, was proceeding in a southerly direction to her berth at the general petroleum terminal. When the Seekonk sighted the Lebec the two vessels were about 1,000 yards apart, headed in the directions just indicated. The Seekonk gave a two-blast signal for a starboard passing, and the Lebec answered with a single blast. The officers of the Lebec heard but one blast from the Seekonk, and the officers of the Seekonk claim to have heard two blasts from the Lebec. Because of these errors in giving and hearing signals, the Seekonk proceeded on her way assuming that she would pass the Lebec starboard to starboard, and the Lebec proceeded on her way assuming that the two vessels would pass port to port. After proceeding under these erroneous assumptions for some little time, the Lebec started to cross the bow of the Seekonk, and the latter gave a second two-blast signal to confirm the signal first given. The Lebec thereupon gave a three-blast signal and reversed her engines and the Seekonk did likewise. The vessels drifted together, however, and the Seekonk struck the Lebec on her port side, causing damage to both ships. The Lebec thereupon libeled the Seekonk and her owner. The owner of the Seekonk tendered the defense to the city of Los Angeles, but the city refused to defend. The owner of the Seekonk then filed a cross-libel against the Lebec and impleaded the city of Los Angeles, claiming that if the Seekonk was at fault her liability to the Lebec should be borne by the city whose pilot was in charge of her navigation. Thereafter the owner of the Seekonk filed an independent libel against the city claiming damages in its own behalf as owner of the Seekonk as well as indemnity for any damages recovered by the Lebec. The two libels or suits were consolidated and tried together by agreement. Upon final hearing the court below found that the collision was due solely to the negligent navigation of the Seekonk by her pilot, who was an employee of the city of Los Angeles. The Lebec was thereupon awarded full damages against the Seekonk and the owner of the Seekonk recovered against the city for the damages thus recovered by the Lebec and likewise for the damages sustained by the Seekonk and for the expenses incurred in defending the libel filed against her, with interest and costs. From this decree the city has appealed.

The appellant contends that both vessels were at fault; that the pilot in the employ of the city was not in charge of the navigation of the Seekonk; and that in any event the Seekonk was not compelled by law to accept the services of the municipal pilot, and that for that reason the city is not liable. The first contention of the city must be sustained. Both vessels were equally at fault in not hearing or giving the proper signals. The morning was clear, with only a moderate breeze; the vessels were in plain sight of each other, little, if any, more than half a mile apart; and no excuse whatever was offered by either vessel for failing to hear the signals given by the other, or for failure to give the proper signals in return. As said by the court in The New York, 175 U. S. 187, 204, 20 S. Ct. 67, 73 (44 L. Ed. 126):

"The night was clear, and there appears to have been no difficulty in seeing the white and colored lights of the Burlington and her tow, and should have been none in seeing the lights of the Conemaugh. No reason is given why the signals of the Conemaugh were not heard, and as the New York was not more than a mile distant from her when her first signal was blown, and considerably less than that when the second signal was blown, her inability to hear them is inexplicable, except upon the theory that no sufficient lookout was maintained, or that such lookout did not attend properly to his duties. Her officers failed conspicuously to see what they ought to have seen or to hear what they ought to have heard. This, unexplained, is conclusive evidence of a defective lookout."

And the duty to answer a signal promptly is as imperative as the duty to give one. Id., 206 of 175 U. S. (20 S. Ct. 67). The Seekonk was therefore at fault in attempting a starboard passing without first procuring the assent of the approaching vessel, and in fail-

ing to keep out of the way of a vessel on her starboard side. The Lebec was likewise at fault in failing to either assent to the starboard passing or to sound the danger signal, as required by the rules of navigation, and it seems clear to us that both faults contributed to the collision.

◼ Assuming that the municipal pilot was in charge of the navigation of the Seekonk, his duties were not completely those of the master, and the authority of the master was not superseded or suspended by the presence of the pilot. He still remained master, in full charge of the vessel and crew, and upon him rested the responsibility for the safety of the ship and all on board.

"It is the duty of the master to interfere in cases of the pilot's intoxication or manifest incapacity, in cases of danger which he does not foresee, and in all cases of great necessity. The master has the same power to displace the pilot that he has to remove any subordinate officer of the vessel. He may exercise it or not, according to his discretion." The China, 7 Wall. 53, 67 (19 L. Ed. 67).

"Nor are we satisfied with the conduct of the master in leaving the pilot in sole charge of the vessel. While the pilot doubtless supersedes the master for the time being in the command and navigation of the ship, and his orders must be obeyed in all matters connected with her navigation, the master is not wholly absolved from his duties while the pilot is on board, and may advise with him, and even displace him in case he is intoxicated or manifestly incompetent. He is still in command of the vessel, except so far as her navigation is concerned, and bound to see that there is a sufficient watch on deck, and that the men are attentive to their duties." The Oregon, 158 U. S. 186, 194, 15 S. Ct. 804, 808 (39 L. Ed. 943).

"A phase of the evidence furnished support for the inferences that the master of the Atenas, before that vessel reached a point in the river where its movement might affect the City of Canton, was aware that, under the direction of the pilot, it was being so operated that, without a change of its course or speed, it might cause a violent movement of a vessel situated as the City of Canton was; that he negligently failed to suggest to the pilot the danger which was disclosed, and means of avoiding such danger; and that the master's negligence in failing to give timely admonition to the pilot proximately contributed to the injury complained of." Jure v. United Fruit Co. (C. C. A.) 6 F. (2d) 6.

◼ In the present case it was the duty of the master to see that there was a sufficient watch on deck, that the men were attentive to their duties, and that signals were properly heard and given. If the master had discharged that duty, it would have been apparent to him that the course pursued by the Seekonk in crossing the course of the Lebec was a dangerous one under the circumstances and that a collision was imminent unless his vessel changed her course or came to a stop. But notwithstanding the knowledge the master had and the knowledge imputed to him, he did nothing whatever to forestall the disaster, and was clearly negligent in that regard.

◼ In view of this conclusion it is perhaps unnecessary to consider whether the city was liable in any event for the acts of the pilot, who was voluntarily employed by the master of the Seekonk; but it seems plain to us that it was not. The pilot was placed in charge of the Seekonk by the master and not by the law, and the rights and obligations of the parties must be determined by reference to the relation thus established. In the varied affairs of life it is not always easy to determine where responsibility rests for the act of a servant in the general service of one master but employed in the particular work of another. But the test almost invariably applied is: Whose was the work, and whose the power of control? Guy v. Donald, 203 U. S. 399, 27 S. Ct. 63, 51 L. Ed. 245; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480. While here, the pilot was in the general employ of the city, the work in which he was immediately engaged was the work of the ship or master, and the only control to which he was subject was the control of the master. The city was powerless to direct him in the discharge of his duties and was not present to discharge him from the particular service in case of negligence or incompetence. Under such circumstances we think the cases practically all agree that there was no liability on the part of the city, except perhaps for the employment of a pilot of known incompetence; and no such question is presented here.

The decree against the city must therefore be reversed, with directions to dismiss the several libels against it. Inasmuch as the owners of the two vessels involved seem to have settled their differences by stipulation, we are not called upon to consider their rights and obligations inter sese.

Reversed.