**PORT OF SEATTLE, a Municipal Corporation, Plaintiff,**

v.

**M/V MARIA RUBICON, her engines, tackle, furniture, apparel and appurtenances, Defendant.**

**GENERAL STEAMSHIP NAVIGATION CORP., Claimant, Counter Plaintiff and Third-Party Plaintiff,**

v.

**FOSS LAUNCH & TUG CO., a Washington Corporation, TUG SHELLEY FOSS, her engines, tackle, furniture, apparel and appurtenances, et al., Third-Party Defendants.**

**No. 74–493.**

United States District Court, W. D. Washington, Seattle.

Nov. 20, 1975.

Edward C. Biele, of Bogle & Gates, Seattle, Wash., for plaintiff.

Thomas F. Paul, Howard, LeGros, Buchanan & Paul, Seattle, Wash., for Gen'l Steamship Navigation Corp.

David Danielson, Lane, Powell, Moss & Miller, Seattle, Wash., for Foss Launch and Tug Co.

William J. Glueck, Riddell, Williams, Ivie, Bullitt & Walkinshaw, Seattle, Wash., for Puget Sound Pilots Assn.

Jacob A. Mikkelborg, Moriarity, Long, Mikkelborg & Broz, Seattle, Wash., for Grobschmit.

## ORDER GRANTING SUMMARY JUDGMENT AND DENYING DISCOVERY MOTIONS

BEEKS, District Judge.

Defendant General Steamship Navigation Corporation ("GSN"), as third party plaintiff, has impleaded Puget Sound Pilots Association ("PSP") maintaining that PSP is answerable for the alleged negligence of one of its members, third party defendant William F. Grobschmit. PSP moves for summary judgment citing impressive authority in support of its contention that a pilots' association is not legally responsible for the individual negligence of a member pilot.

GSN has heretofore engaged in extensive discovery in an effort to ascertain the organizational nature and anatomy of PSP, the scope of said efforts being limited by this Court's orders of May 15 and August 12, 1975. GSN now moves the Court for an order compelling production of further PSP documents and excised portions thereof and, additionally, seeks leave to take the deposition of Captain Philip L. Luther, acting president of PSP. The proper resolution of each of the above motions is dictated by identical legal and factual considerations.

GSN has gone to great lengths seeking to demonstrate PSP's considerable influence and impact on the working environment of its members. GSN has succeeded in this regard. Indeed, it cannot be doubted that PSP, at least as it has been administered, possesses the power and, perhaps, the disposition to effectively frustrate the livelihood of uncooperative or politically rebellious pilots. Said power finds its principal source not in the law but in the overwhelming economic advantage enjoyed by PSP members over non-members in obtaining, through the association, costly services and facilities required by pilots to carry out their working assignments. While neither the legality nor the propriety of PSP's internal mores is before the Court, I nevertheless appreciate that much might be said critical of the manner in which PSP wields its political power and discourages minority views within its membership. This notwithstanding, the Court is constrained by settled legal precedent to curtail further discovery and grant PSP's motion for summary judgment.

It is now well-established that the legal responsibility for the occupational misadventures of a pilot cannot be imposed vicariously on his pilots' association absent a showing that the association was *itself*, through its membership, in the business of providing pilotage services with the concomitant power and responsibility to control such pilots' professional conduct.[1] This show-

---

1. *Guy v. Donald*, 203 U.S. 399, 27 S.Ct. 63, 51 L.Ed. 245 (1906); *McGrath v. Nolan*, 83 F.2d 746 (9th Cir. 1936); *General v. Pilots' Association For Bay & River Dela-

ing has not been made with respect to PSP and cannot be made, because the Washington Pilotage Act of 1967[2] vests in the State Board of Pilotage Commissioners broad and exclusive powers to regulate and control the professional behavior of Washington pilots.[3] By virtue of this legislation said Board has been constituted the sole repository of such power. PSP clearly lacks legally recognizable power to control its members in the rendition of their professional services and, therefore, is not accountable for their negligence. This being the case, no factual showing by GSN can affect the disposition hereof and further discovery by GSN could not elucidate the question of PSP's liability; indeed, upon reflection, it appears that the Court has probably been unduly indulgent in authorizing past GSN discovery.

Accordingly, GSN's motions are denied and the Clerk shall enter judgment of dismissal with prejudice and with costs in favor of PSP.

*ware,* 254 F.Supp. 447 (D.Del.1966) ; *O'Hare v. United States of America,* 1950 A.M.C. 182 (W.D.Wash.1949).

2. R.C.W. 88.16.

3. The Board's powers include the issuance and revocation or suspension of pilots' licenses, the promulgation of rules promoting efficient and competent pilotage services, and the enforcement of penalties for violations of Board rules or the Pilotage Act itself. R.C.W. 88.16.030, 88.16.090, 88.16.100.