**Dorothy S. McKEITHEN, Individually and on behalf of her deceased husband, Charles F. McKeithen**

v.

**The S.S. FROSTA, the M/V GEORGE PRINCE, A/S J. L. Mowinkels Rederi, and the Department of Highways of the State of Louisiana.**

**In the Matter of A/S J. LUDWIG MOWINKELS REDERI, as owner of the M/T FROSTA, Petitioning for exoneration from or limitation of liability.**

**In the Matter of the DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA, ex rel. William J. GUSTE, Jr., Attorney General, as Owner of the M/V GEORGE PRINCE, Petitioning for exoneration from or limitation of liability.**

**Civ. A. Nos. 76–3251, 76–3275 and 76–3654.**

United States District Court, E. D. Louisiana.

Nov. 17, 1977.

Walter C. Thompson, Jr., New Orleans, La., for Succession of Auletta.

Daniel E. Becnel, Jr., Reserve, Joel T. Chaisson, Destrehan, Eldon E. Fallon, A. Remy Fransen, Jr., New Orleans, La., James A. George, Baton Rouge, La., Salvador H. Gutierrez, Jr., John R. Martzell, New Orleans, La., for plaintiffs.

Francis J. Mooney, Jr., New Orleans, La., for New Orleans—Baton Rouge Steamship Pilots Assn. and Nicholas F. Colombo.

Walter Carroll, Jr., Charles F. Lozes, Benjamin W. Yancey, New Orleans, La., for S.S. Frosta and A/S J. L. Mowinckels Rederi.

John P. Hammond, John R. Peters, Jr., Henry J. Read, New Orleans, La., for the M/V George Prince.

Nigel Rafferty, New Orleans, La., for Southern American Ins. Co.

Donald Ensenat, New Orleans, La., for Dept. of Highways, State of La.

ALVIN B. RUBIN, Circuit Judge: *

OPINION WITH RESPECT TO THE MOTION OF THE PILOTS ASSOCIATION FOR SUMMARY JUDGMENT AGAINST CLAIMS BASED UPON THE NEGLIGENCE OF THE ASSOCIATION:

Persons injured by the alleged negligence of a pilot, who is a member of the Pilots Association, assert that the association itself is liable to them if it was negligent in failing to screen its members for competence, or if it was negligent in failing to instruct its members concerning the statutes and navigational rules that govern their conduct as pilots. For reasons set forth below, the association, as a corporate body, is not liable, and its motion for summary judgment is GRANTED.

I

The plaintiffs[1] have asserted claims against the New Orleans and Baton Rouge Steamship Pilots Association ("association") arising out of the collision between the M/T Frosta, which was piloted by Nicholas Colombo ("Colombo"), a member of the association, and the ferry George Prince. Several scores of passengers on the George Prince were killed or injured as a result of the collision. Summary judgment has already been rendered in favor of the association with respect to all claims based upon the association's vicarious responsibility for Colombo's tort. The present opinion concerns those claims predicated upon the association's own negligence, independent of its vicarious responsibility for Captain Colombo's negligence.

The plaintiffs have adduced some evidence that, construed most favorably to them, would tend to show that the association was negligent in ensuring Colombo's competence and in educating him as to the rules governing traffic upon the Mississippi River. They have alleged that the association was negligent in admitting him to membership and assigning him to the Frosta. However, they have failed to support these charges as required by Rule 56, Fed. R.Civ.Proc. Assuming, as we must for purposes of this motion, that the alleged negligence can be proved, and that it was in fact the legal cause of the plaintiffs' loss, the plaintiffs must also establish that the association owed plaintiffs a duty of care that was breached by this negligence.

The general principles set forth in the Restatement of Torts appear to be ap-

---

* Sitting as District Judge by designation of Chief Judge John R. Brown.

1. As used here, the term includes both the plaintiffs represented by the plaintiffs' committee and the separately represented Auletta claim.

plicable in our analysis here. *Spinks v. Chevron Oil Co.,* 5th Cir. 1975, 507 F.2d 216, 222–223. Article 315 of the Restatement of Torts, Second, provides:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right of protection.

Here the association is sought to be held liable as actor for its negligent failure to control the conduct of the pilot. We examine the association's relationship to the pilot to determine whether the nature of that relationship created the duty asserted. The pilots association is a voluntarily formed non-profit corporation. The formation of the association is permitted by L.S.A.–R.S. 34:1047, which provides for self-regulation not in conflict with law or the rules and regulations of the Board of Commissioners. The association maintains a central office where it receives requests for pilotage. It maintains a roster of pilots available for duty and dispatches them to vessels on a rotating basis. It collects the pilots' fees, pays general overhead expenses from these receipts and remits the remaining receipts on a monthly basis to the individual member pilots according to an established formula based on the number of days each individual was available for piloting vessels. The association does not take out withholding tax or FICA on monies distributed to the pilot members because they are self-employed. The association files an annual federal income tax return on a corporate form (Form 1099), but does not pay taxes as an entity. See, *Mobile Bar Pilots Assoc. v. C. I. R.,* 5th Cir. 1938, 97 F.2d 695. It does not accrue profits of its own from the pilots' work.

This association is not the employer of the pilots, nor is it a partnership of pilots. See the August 25, 1977 opinion of this court. Hence, we focus on the issue of the duty of care it may owe to persons who neither have any contractual relationship with it, nor stand, as the owners of vessels to whom it assigns pilots might, in some special relationship to it. We are concerned with the duties it owes in tort to the world at large including passengers on other vessels.

■ If a person owes a duty of care to protect a party from injury, it may be liable for the neglect of a third person who causes the injury. Thus, a prison official may be liable for the tort of one inmate against another, *Parker v. State,* La.App.1972, 261 So.2d 364, aff'd, 282 So.2d 483, cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550, because the officials owe a duty to protect all inmates; failure to prevent the tort of even a person for whom the official is not vicariously liable may be a wrong to the injured inmate due security. Similarly, the torts of third persons may render innkeepers liable to guests, *Nordmann v. National Hotel Co.,* 5th Cir. 1970, 425 F.2d 1103, and common carriers to passengers, *Skipper v. New Orleans Public Service, Inc.,* La.App. 1976, 338 So.2d 771.

■ The association however stands in no such special relationship to passengers on vessels not piloted by its members. We need not take a hypothetical voyage to determine what duty, if any, the association owes to the owners of vessels to whom it provides pilots or to passengers on those vessels. The association provided Colombo's services to the Norwegian vessel, the Frosta, and not to the ferry George Prince or its passengers. Those persons were neither the association's guests, its passengers, its inmates, or indeed known to it.

Nor do we deal here with the possible duty to avoid gross negligence or liability for acts that might evidence a calculated disregard for humanity. Each member of the association had been licensed by the Coast Guard, served a six month apprenticeship, passed the Board of Commissioners' examination, and had been recommended by the Board and appointed by the Governor. The most that is asserted is that the association had two separate duties: to

ensure further the competence of pilots and thus screen out other qualified applicants and, following their licensing, to take steps to assure their continuing professional competence.

To be a pilot for hire, it is virtually an economic necessity to belong to the association. At present, all commissioned pilots operating between the Huey Long Bridge and Baton Rouge are members of it. Although its services are virtually indispensable to the pilots as a group, the association does not have a legal monopoly on pilotage. A pilot's legal ability to perform service aboard a vessel does not depend on membership in the association, although as a practical matter it may be difficult for a pilot who is not a member to find work. *Heuer v. Crescent River Port Pilots Assoc.,* La.App.1963, 158 So.2d 221, 224.

Many professional societies, in effect, furnish some indicia of their members' competency. These include, for example, voluntarily formed associations of professionals, such as the American Bar Association, the American Medical Association, the various architectural and engineering professional groups, and various medical specialty groups.[2] The medical specialty groups indeed hold out their members as having particular competence. In addition, where the state has an integrated bar association, such as the Louisiana State Bar Association, membership in this association is a requisite to practice. Art. IV, §§ 1, 4, Articles of Incorporation of the Louisiana Bar Association. See also, *In re Mundy,* 1943, 202 La. 41, 11 So.2d 398.

The pilots association performs valuable economic services for its members that the other associations mentioned apparently do not. The association assigns pilots to clients, and collects and distributes their fees. However, these characteristics do not appear to make the pilots association unique and thus distinctive as compared to other professional organizations. Members of the Louisiana State Bar enjoy both a practical and legal monopoly on the rendi-

tion of legal services. While membership in a medical society is not a prerequisite to medical practice and membership in a medical specialty group is not indispensable to practicing that specialty, those memberships evidently furnish significant economic benefit to the members.

We are not concerned with an association of professionals that reaps financial benefits from its members' business activities so as to warrant imposing responsibility for the harms that result from those activities. Although membership in the association may prove profitable for a member, as might membership in other esteemed societies, this benefit does not inure to the association. The primary purposes of the association are to provide organizational and billing services for its members. These services, and those services provided by other associations analogous to the pilot association, are intended to benefit the profession and therefore the public at large. But the association does not, when it seeks to promote the profession, guarantee the professional conduct of its members to the general public. Nor should its efforts to improve the profession be burdened with such an obligation.

Counsel have been unable to cite any authority for recognizing, and the court has been unable to discern, a duty to the public on the part of other associations in admitting or educating its members. Whether or not such associations owe a duty to persons who utilize professional services to prevent a patently incompetent member from practicing or to prevent such a member from being assigned to a client, that type of duty to that class of persons is not alleged here. For purposes of the present motion, we need only consider whether a duty exists that was breached by the negligence alleged. Hence, we consider in greater detail each allegation of negligence independently.

## II

It is alleged that the association was negligent in screening applicants and, as a

---

2. See the Encyclopedia of Associations (Gale Research Co. 1970) for a description of thou-

sands of professional associations and societies.

result, in admitting Captain Colombo to membership. The association approves applicants for its apprentice program by majority vote. (Charter, at art. IV, sec. (d)). The length and conditions of apprenticeship are to be regulated by the association's by-laws (Charter at art. IV, sec. (a)(4) and (d)), which apparently fail to establish explicit conditions. After serving six months in apprenticeship, an applicant is eligible for membership subject to approval by majority vote. (Charter at art. IV, sec. (a)(4); by-laws, at art. 1, rule 7(B)).

The association is not responsible for licensing pilots. A Coast Guard license is required before a person can become an apprentice or pilot. L.S.A.–R.S. 34:1045. In addition to a license, the pilots association requires a state commission as a condition of being allowed to pilot a "sea-going vessel" between New Orleans and Baton Rouge, L.S.A.–R.S. 34:1049 and 34:1043. This commission is issued by the Governor after examination by a Board of Commissioners, L.S.A.–R.S. 34:1045, a state agency that is entirely separate from the association, although all commissioners are themselves pilots.

It is alleged that the screening procedures adopted by the association were insufficient. Challenged by affidavits on behalf of the association showing the lack of negligence on its part in admitting members, the plaintiffs have offered no evidentiary basis for their allegations that would justify the trier of fact in inferring the association was negligent in admitting Colombo. He possessed the requisite Coast Guard license, as well as a Master's license that is awarded only to those meeting stringent requirements.[3] Captain Colombo had completed a six month apprenticeship under the Board of Pilot Commissioners and had passed a Commission examination before he became a member of the association. He had served 13 years in various maritime duties, including 4 years as a state ferry

boat master and 7 years as a tug captain. The plaintiffs have not alleged or suggested any reason why Captain Colombo should have been excluded from membership.

Even if it is assumed, *arguendo,* that the association has a duty to passengers on non-piloted vessels to screen and exclude patently incompetent pilots from membership, there is no basis for inferring a duty to those passengers to adopt more stringent screening procedures than were utilized here.

Accordingly, the motion for summary judgment with respect to claims based upon the association's alleged negligence in screening and admitting Captain Colombo to membership is GRANTED.

### III

■ The plaintiffs also contend that the association had a duty to the general public to ensure that the competence of its members and was negligent in this regard with respect to Captain Colombo. The argument fails for the same reasons that the argument with respect to screening and admission of Colombo failed: If the duty existed, there is no basis for inferring that it was violated.

No facts that would justify the trier of fact in concluding that Captain Colombo was not competent or that the association should have determined that he was not competent have been offered. Captain Colombo had been a pilot for 22 months and had not been involved in any accident at any time. No complaint of any nature had ever been lodged with the Board of Commissioners regarding him. The only possible basis for concluding that Colombo was not competent is his alleged unfamiliarity with the rules of the road with respect to burdened and privileged vessels. This allegation is the basis of the plaintiffs' claim that the association failed to educate Colombo properly, and will be considered with

---

**3.** At the time of the collision, less than half of the then 47 members of the association held such Master's licenses. The Master's license requires separate examination on such matters as: rules of the road; instruments and accesso-

ries; shiphandling and navigation; cargo storage; stability; ship construction and temporary repairs; life-saving apparatus and fire-fighting; general ship business and math. (Colombo affidavit.)

respect to that claim. Even if the association had some duty to the general public to ensure the competence of its members, there is no evidence that the obligation was breached here in the light of Captain Colombo's record prior to the collision.

Accordingly, the motion for summary judgment with respect to the claim of negligence predicated upon the failure to ensure the competence of Captain Colombo is GRANTED.

## IV

■ The third allegation is based on the contention that the association had a duty continually to educate its members, and that this duty was breached by the failure of the association to familiarize Colombo with the rules respecting the rights of privileged and burdened vessels. We assume, *arguendo*, that Colombo's lack of familiarity with these rules was a direct cause of the collision.

The association, by its own declaration, seeks to "inculcate, secure and maintain skill, discipline, merit and efficiency in the pilots engaged in this business." (Charter, at art. III.) Other professional associations frequently seek similar objectives with respect to their members. See Winters, The Contribution of Professional Organizations, 1963, 17 Vand.L.Rev. 265, passim. But an association does not thereby assume a duty to its members' clients, or *a fortiori* to the general public to ensure that the skill and knowledge of its members is maintained at an adequate level. The attempts of private associations to improve the skills of their members, where they are under *no legal obligation* to do so, ought not render the associations liable if they fail in their efforts. Whether the association would be liable where it negligently disseminated wrong information is not raised by the facts alleged here.

The pilots association did not examine pilots. The Board of Commissioners did so, and there is no evidence that the association had reason to believe its requirements or those of the Coast Guard were inadequate. Even if it is assumed, therefore, that Colombo was not at the time of the collision, familiar with the rules of the road, that this was known to the association, that the association could have remedied the ignorance by a continuing education program, and that Colombo's lack of knowledge was a direct cause of the collision, there is no basis for inferring that the association owed the plaintiffs a duty that was violated by its failure to educate or continually to re-educate him. It bears repeating that no contention is made that the association acted in wanton disregard of the public weal, or violated any alleged duty due to those who contracted for pilot services; an examination of the legal consequences of such evidence must await the case in which they arise.

Accordingly, the motion for summary judgment based upon the association's alleged failure to provide a sort of continuing piloting education program is GRANTED.

## V

■ Finally, the plaintiffs contend that the association was negligent in selecting Colombo to serve on the Frosta.[4] The by-laws of the association provide for the assignment of pilots to vessels on a rotating basis, without regard to the individual pilot's qualifications or the type or size of the vessel. The system is similar to that employed by taxi services at large terminals, with each prospective client being assigned to the next available pilot. There is no basis, other than Captain Colombo's alleged unfamiliarity with the rules of the road, allegedly shared by other pilots, for not

---

4. This court is aware that the plaintiffs' committee in communication to the various plaintiff attorneys has mentioned the failure of the association to provide Captain Colombo with proper radio equipment as a basis of liability. However, the plaintiffs have not discussed this issue in memoranda nor have they set forth evidentiary material required by Rule 56, Fed. R.Civ.Proc., with regard to the alleged failure. The court is unable to find a basis for inferring a duty on the part of the association to provide such equipment to its members or to vessels piloted by its members.

assigning him to the Frosta. His record was impeccable. He had been off duty for six days prior to his assignment and was fully rested. He had no physical impairments and had not been drinking. Hence, even if the association has a duty to other passengers on the river to use due care in assigning pilots to those vessels utilizing them, there is no basis for concluding that this duty was breached.

### VI

 The reported decisions have uniformly held pilot associations immune from vicarious liability for the torts of their members. *Guy v. Donald,* 1906, 203 U.S. 399, 27 S.Ct. 63, 51 L.Ed. 245; *Dampskibsselskabet Atlanta A/S v. U. S.,* 5 Cir. 1929, 31 F.2d 961; *In re China Lines, Ltd.,* E.D. La.1971, 342 F.Supp. 426, aff'd sub nom., *C & G Boat Co., Inc. v. Crescent River Port Pilots Association,* 5th Cir. 1972, 456 F.2d 1290. Although each of these cases was primarily concerned with the issue of vicarious liability, these decisions bear upon the issue raised here. The courts in *Guy* and *Dampskibsselskabet* were each influenced in their determinations by the lack of control any pilot association can exert upon its members once they take the helm of a vessel.

In *Union Faith,* the appellants squarely raised the association's monopolistic control of pilot services as a basis for liability before the Fifth Circuit (page 16 of appellant's brief), but the court refused to impose vicarious responsibility as a consequence. The association's limited responsibility in examining, educating, and licensing pilots, and the limited control it can exert over the pilot's conduct precluded holding the association vicariously responsible for the lack of experience, skill or judgment of its members. These same factors negate the inference of the particular duty sought to be invoked as a basis of liability here.

Accordingly, the motion for summary judgment with respect to the claim based upon negligent assignment of Captain Colombo to the Frosta is GRANTED. As all claims against the association have been dismissed on summary judgment, the court of its own motion DISMISSES the New Orleans and Baton Rouge Steamship Pilots Association.