DAMPSKIBSSELSKABET ATALANTA A/S
et al. v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
April 8, 1929.

Rehearing Denied May 15, 1929.

No. 5324.

H. F. Stiles, Jr., and Jos M. Rault, both of New Orleans, La. (Terriberry, Young, Rault & Carroll and Geo. H. Terriberry, all of New Orleans, La., on the brief), for appellant Dampskibsselskabet Atalanta A/S.

Nat W. Bond and George Janvier, both of New Orleans, La. (Janvier, Bond, Curtis, Hall and Foster, of New Orleans, La., on the brief), for appellant Associated Branch Pilots of Port of New Orleans.

Luther E. Hall, of New Orleans, La., for appellant Breen.

Edmond E. Talbot, U. S. Atty., of New Orleans, La.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

FOSTER, Circuit Judge. At about 2:30 a. m. on April 24, 1926, the steamship Sierra Leona collided with two spur dikes extending a distance of 1,700 feet from the west bank of Southwest Pass, in the Mississippi river, and damaged them. The United States brought an action at law against the Dampskibsselskabet Atalanta A/S, a Danish corporation, owner of the vessel, against the Associated Branch Pilots of the Port of New Orleans, and against Edmond Breen, a member of the said association, who at the time was employed in piloting the vessel, to recover damages alleged to be $3,717.62. In general terms the petition alleged that the vessel was negligently and improperly navigated. The case was tried to a jury, and resulted in a verdict against the three defendants, in the sum of $2,044.08, on which judgment in solido was entered.

It appears from the record that the Associated Branch Pilots of the Port of New Orleans is an organization created by the laws of Louisiana. It is composed of 35 members, each of whom is a pro rata owner of all the assets of the organization. It owns and operates pilot boats which are used for the purpose of placing pilots on, and removing them from, vessels navigating the passes at the mouth of the Mississippi river It has no control over the licensing of pilots, but does control membership in its own organization. Pilots are appointed by the Governor of Louisiana after an examination by a board of examiners, which is a state board composed of members of the association, but not controlled by it. Fees earned by individual pilots are collected by the association. At the end of each month, all the expenses of the organization are taken out of the pool, and the balance is divided among the members on the basis of the number of days worked by each. Members of the as-

sociation are assigned to work in regular order, and no one is given any preference over any of the others.

■ In the course of the general charge, the court, referring to the pilots' association, charged as follows: "I charge you as a matter of law in actions of this kind where one of the pilots in the performance of his duty as a member of that organization is guilty of a negligent act in a case arising in tort such as this, that because of the peculiar relationship of the Associated Branch Pilots each to the other, the pilots in the association are bound together with him for the results of his negligent act." Error is assigned thereto.

On the facts above stated the case comes clearly within the rule announced in Guy v. Donald, 203 U. S. 399, 27 S. Ct. 63, 51 L. Ed. 245. There is nothing in the law of Louisiana to take the defendant organization out of the general rule. The case of The Joseph Vaccaro (D. C.) 180 F. 272, relied upon by appellee, does not support such a contention, as the question of responsibility of the association to third persons for the negligent act of one of its members was not considered in that case. The law of Louisiana makes a distinction between trading or commercial partnerships and partnerships for the rendering of personal services, called ordinary partnerships, but, for the purposes of this case, it is immaterial whether a pilots' association be considered a partnership or not. The fundamental principle underlying the exemption of pilots' associations from liability for negligence of their members in performing their duties as pilots is that the association exercises no control over the manner in which those duties are to be performed, and therefore a pilot cannot be said to be an agent of the association in that respect. The charge was error.

■■ It appears from the record that at the time of the accident a dense fog prevailed, so that it was impossible to see ahead for any distance. The master and other officers of the Sierra Leona were making their first voyage through Southwest Pass, and knew nothing of the geography and topography of Southwest Pass or of the rules and regulations pertaining to its navigation.

The following part of the general charge was excepted to:

"As a matter of law I charge you if you believe the foggy condition was such as to make it difficult for the ship to be operated at all, then the master, or first or second officer of the ship in the master's absence, was obliged to take the ship from under the control of the pilot."

The purpose of requiring a vessel to take a pilot is to have her in charge of a competent person, familiar with particular waters. When on board he is temporarily in charge of her whole navigation, including the duty of determining her course and speed, and the time, place, and manner of anchoring her. The master is not entirely absolved of responsibility when a pilot is in charge, but before he is justified in displacing him he should be sure that the pilot is for some reason incompetent. Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742, The Oregon, 158 U. S. 186, 15 S. Ct. 804, 39 L. Ed. 943. The Sierra Leona was in charge of a compulsory pilot for whose negligence her owners were not responsible in an action at law. Homer Ramsdell Co. v. La Compagnie Generale Transatlantique, 182 U. S. 406, 21 S. Ct. 831, 45 L. Ed. 1155. Unless the master was also guilty of negligence contributing to the accident, the owner of the Sierra Leona was entitled to be absolved.

As the master knew nothing about the local conditions, it would seem that in the exercise of sound discretion he was justified in leaving her navigation entirely to the pilot as, but for the subsequent accident, there is nothing in the record to even suggest that the pilot was incompetent. Aside from this, the navigation of the ship was primarily in charge of the pilot, and, while the master had the right, if he deemed him incompetent and circumstances warranted it, to displace him, he was not under the absolute duty to do so, but was entitled to exercise his sound discretion. Whether he should have displaced him, on the facts shown, was not a matter of law for the court, but was a question to be determined by the jury on all the facts and circumstances of the case. The just quoted portion of the charge left nothing for the jury and was error.

■ It appears that under the Rivers and Harbors Act of March 3, 1909, § 5 (33 USCA § 2), the Secretary of War is authorized to make rules and regulations for the navigation of South and Southwest Pass of the Mississippi river, and that any willful violation of any rule or regulation made by the Secretary of War in pursuance of that act is a misdemeanor, for which the pilot of a vessel so offending may be punished by a fine of not less than $100 nor exceeding $500, or by imprisonment not exceeding three months, or by both. In the regulations adopted May 11, 1920, it is provided that vessels anchoring in Southwest Pass shall take position near the eastern bank and above a point marked by a post, painted white, on the bank

about one and one-half miles above Southwest Pass lighthouse.

The defendant Edmond Breen, sworn as a witness in his own behalf, testified in substance that, after the vessel had passed by the anchorage post which designates the anchorage grounds in Southwest Pass, a fog came up that obscured the bank of the pass, range lights and range targets making it necessary to navigate entirely by compass, and that he gave the helmsman the correct compass bearing to steer by.

In the course of his charge, the judge charged the jury as follows: "Now something has been said here with respect to this regulation, the regulation pertaining to the anchorage of ships in Southwest Pass before the white post. I charge you as a matter of law that that regulation was meant only as such regulations are always meant, to prevent the anchorage of vessels down in that pass within a few miles of the sea, except— because all such regulations are subject to exception—when it would be dangerous for them to pursue the course through there otherwise. The pilot had no right to take the vessel through, but stop (should have stopped) before going further in the fog from the moment of his confusion—if you believe he became confused—and it was his duty to anchor the vessel right then and there in the Pass. His failure to do so and failure of the master of the ship to have him do so would amount to such negligence as would make them liable for the result of their acts because it is as matter of law a negligent thing to run a ship in such a narrow pass under the circumstances disclosed by this evidence, when ordinary prudence would dictate the stopping of the ship, if not her anchoring."

We may assume that a pilot is bound to have a high degree of skill and to use more than ordinary care, but, if he in good faith exercises sound judgment, it does not follow that he is guilty of negligence merely because the vessel in his charge unfortunately has an accident.

Primarily, a pilot is bound to obey the rules made by proper authority to govern the waters he is navigating. In this case the pilot was confronted with a very serious difficulty. The rule above quoted is evidently intended to prevent collisions between vessels navigating the pass, and all those doing so are entitled to rely upon it. If he had anchored his ship at the time and place where it became difficult to navigate in the fog, he would have violated the rule, and possibly have subjected himself to a severe penalty,

and also might have caused a collision with another vessel. Conceding that the rule is subject to exceptions, and that navigating in a fog under certain conditions may be negligence, if in the exercise of his best judgment he thought it safer to proceed as he did, he was entitled to the consideration of the jury on the question of his negligence. Davidson S. S. Co. v. U. S., 205 U. S. 187, 27 S. Ct. 480, 51 L. Ed. 764. The charge virtually took the question of negligence away from the jury, and was error.

Other errors are assigned, but, as those above considered dispose of the main contentions of all the defendants, it is unnecessary to consider them.

Reversed and remanded.