# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00888-CV

**MT Falkin Investments, L.L.C., Appellant**

**v.**

**Chisholm Trail Elks Lodge No. 2659, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 11-642-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## O P I N I O N

Appellant MT Falkin Investments, L.L.C. ("MT Falkin") appeals the trial court's final summary judgment in favor of appellee Chisholm Trail Elks Lodge No. 2649 ("Chisholm Trail"). MT Falkin sued Chisholm Trail for breach of contract, alleging that Chisolm Trail, as a member of the Williamson County Charitable Bingo Association (the "WCCBA"), is liable for damages resulting from the WCCBA's breach of a commercial property lease. On appeal, MT Falkin asserts that the trial court erred in granting summary judgment. We affirm the judgment of the trial court.

## BACKGROUND

According to its "Restated Articles of Organization" ("WCCBA Articles"), the WCCBA is an "unincorporated not-for-profit association composed of up to six (6) members who must also be non-profit organizations . . . ." The five members of the WCCBA are Chisholm Trail; Georgetown Livestock Booster Club (the "Booster Club"); Round Rock Optimist Club; St. Mary's

School PTC; and the Williamson County Children's Advocacy Center. The WCCBA Articles state that the purpose of the association is "to conduct a shared charitable bingo operation" as well as other related charitable activities.

On July 1, 2008, the WCCBA entered into a five-year written lease agreement (the "Lease Agreement") with MT Falkin for lease of MT Falkin's commercial building, within which the WCCBA would operate a bingo hall. The Lease Agreement lists MT Falkin as the landlord and the "[WCCBA], an unincorporated not-for-profit association," as the tenant, and provides the corresponding rights and obligations of MT Falkin and the WCCBA. Three months after the lease commenced, the WCCBA informed MT Falkin that it was "ceasing the shared bingo business immediately," and the WCCBA subsequently defaulted on the Lease Agreement.

In response, MT Falkin terminated the lease and sued Chisholm Trail and the Booster Club for damages resulting from the WCCBA's breach of the Lease Agreement.[1] MT Falkin's pleadings allege that Chisholm Trail and the Booster Club are each jointly and severally liable for the damages because (1) "they authorized, assented and/or ratified the [Lease Agreement]" and (2) "they were acting as a partnership with the other WCCBA members." The Booster Club failed to respond to the suit, and MT Falkin secured a default judgment against the Booster Club.[2]

After some discovery, Chisholm Trail moved for summary judgment, asserting that it is not vicariously liable for the contractual obligations of the WCCBA and that res judicata prohibited MT Falkin from recovering damages against Chisholm Trail after MT Falkin received a

---

[1] MT Falkin settled its claims with the other WCCBA members.

[2] The trial court severed MT Falkin's claims against the Booster Club from its claims against Chisholm Trail, and the claims against the Booster Club are not part of this appeal.

2

final judgment against the Booster Club. The trial court granted Chisholm Trail's motion for summary judgment. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* We review a trial court's summary-judgment ruling de novo. *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When, as here, the trial court's order granting summary judgment does not specify the grounds relied upon, the appellant must show that each independent ground asserted in the motion is insufficient to support summary judgment. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.). Accordingly, we will affirm the summary judgment if any ground advanced in Chisholm Trail's summary-judgment motion is meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

The issues in this appeal primarily concern the construction of chapter 252 of the Texas Business Organizations Code. *See* Tex. Bus. Orgs. Code Ann. §§ 252.001–.017 (West 2012). Chapter 252 is the codification of the Texas Uniform Unincorporated Nonprofit Association Act ("TUUNAA"), Texas's version of the Uniform Unincorporated Nonprofit Association Act

3

("UUNAA"), which the legislature adopted in 1995. *See id.*; *see also* Act of May 24, 1995, 74th Leg., R.S., ch. 919, §§ 1–20, 1995 Tex. Gen. Laws 4567 (expired Jan. 1, 2010); *Unif. Unincorporated Nonprofit Ass'n Act* §§ 1–14 (amended 1996), 6B U.L.A. 709–51 (2008).

We review questions of statutory construction de novo. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Id.* at 631–32. In determining legislative intent, we first consider the plain language of the statute. *GMC v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

Furthermore, we construe uniform acts such as TUUNAA "to effect its general purpose to make uniform the law of those states that have enacted it." *See* Tex. Gov't Code Ann. § 311.028 (West 2005). Similarly, although the official comments to UUNAA are not law, they are persuasive authority concerning interpretation of chapter 252 because the legislature presumably considered those comments when it adopted the statute. *See Fetter v. Wells Fargo Bank Tex., N.A.*, 110 S.W.3d 683, 687 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (noting that courts give official comments to Uniform Commercial Code weight when interpreting statute). With these principles in mind, we turn to the issues in this case.

## DISCUSSION

Chisholm Trail moved for summary judgment on two independent grounds. First, it asserted that, as a matter of law, it is not liable under the Lease Agreement because it was not a

party to the lease and, under chapter 252 of the business organizations code, it cannot be liable for the contractual obligations of the WCCBA. Second, Chisholm Trail asserted that res judicata prohibits MT Falkin from recovering damages against Chisholm Trail after MT Falkin received a final judgment against the Booster Club. In five issues on appeal, MT Falkin argues that the trial court erred in granting summary judgment on either of these two grounds.

With respect to liability for the Lease Agreement, Chisholm Trail asserted in its pleadings and motion for summary judgment that the WCCBA conducts joint charitable bingo operations for the benefit of its member-charities. Therefore, according to Chisholm Trail, the WCCBA constitutes an unincorporated nonprofit association subject to chapter 252 of the business organizations code.[3] *See* Tex. Bus. Orgs. Code Ann. § 252.001(2) (defining unincorporated nonprofit association). Furthermore, Chisholm Trail asserted that as a member of an unincorporated nonprofit association, it could not be liable for the WCCBA's debts. *See id.* § 252.006(b) (stating members of nonprofit association not liable for association debts based on membership).

On appeal, MT Falkin does not dispute that the WCCBA operates as a joint charitable bingo organization or that the WCCBA members are charitable organizations. Rather, MT Falkin asserts that there is a genuine issue of material fact regarding Chisholm Trail's liability under the Lease Agreement. First, MT Falkin claims there is at least a fact question about whether the WCCBA is a for-profit partnership subject to chapter 152 of the business organizations code, rather than an unincorporated nonprofit association subject to chapter 252. Furthermore, MT Falkin asserts

---

[3] In support of this argument, Chisholm Trail attached copies of the Lease Agreement, the WCCBA Articles, and an affidavit from the WCCBA's chairman stating that the WCCBA is an unincorporated nonprofit association to its motion for summary judgment.

5

that even if chapter 252 does apply, Chisholm Trail is nevertheless liable for the lease because (1) chapter 252 did not abrogate the common-law rule that members of an unincorporated nonprofit association are liable for the association's actions if the members authorized or ratified those actions, and (2) there is at least a fact question about whether Chisholm Trail authorized or ratified the Lease Agreement.  Because MT Falkin's argument that the WCCBA is a partnership rather than a nonprofit association is determinative of which statutory provision governs this dispute, we address that issue first.

**Is the WCCBA a nonprofit association or a partnership?**

In its third and fourth issues on appeal, MT Falkin asserts that the trial court erred in applying chapter 252 of the business organizations code in this case.  Specifically, MT Falkin claims that there is a fact issue about whether the WCCBA is a general partnership subject to chapter 152, rather than a "nonprofit association" within the meaning of chapter 252 of the business organizations code.  *See generally id.* §§ 152.001–.506 (West 2012) (describing creation and liability of general partnership).  Therefore, according to MT Falkin, the trial court erred in concluding that, as a matter of law, chapter 252 applies to the WCCBA and its members.

By its own terms, chapter 252 is the only chapter in the business organizations code that applies to or governs nonprofit associations.  *Id.* § 252.017.  Section 252.001(2) defines a nonprofit association as "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." MT Falkin does not dispute that the WCCBA is an unincorporated organization that was not created by a trust and consists of more than three members.  Rather, MT Falkin argues that the WCCBA

6

was not created for a nonprofit purpose because the revenue that the WCCBA generates from its members' bingo operations is distributed to its members. MT Falkin asserts that this distribution of revenue is effectively profit-sharing by the WCCBA members, regardless of the fact that the members themselves are nonprofit charities.

In support of its argument, MT Falkin contends that under chapter 2001 of the Texas Occupations Code—also known as the Bingo Enabling Act—the WCCBA does not qualify as a "nonprofit organization" that can be licensed to conduct bingo. *See* Tex. Occ. Code Ann. §§ 2001.002(19) (defining "nonprofit organization"), .101(a)(2) (listing requirements for "nonprofit organization" to be eligible for license to operate bingo) (West 2012). Section 2001.002(19)(b) of the occupations code states that a nonprofit organization "may not distribute any of its income to its members, officers, or governing body, other than for reasonable compensation for services . . . ." Thus, according to MT Falkin, the WCCBA's distribution of proceeds to its members precludes it from being a nonprofit organization that can be licensed to conduct charitable bingo, and therefore the WCCBA does not exist for a nonprofit purpose. *See id.* §§ 2001.002(19)(A), .101(a)(2).

This argument improperly conflates the definition of "nonprofit organization" under chapter 2001 of the occupations code with the definition of "nonprofit association" under TUUNAA. *Compare id.* § 2001.002(19), *with* Tex. Bus. Orgs. Code Ann. § 252.001(2). Unlike the occupations code, there is nothing in TUUNAA that indicates a nonprofit association cannot distribute revenue to its members, so long as the members are "joined by mutual consent for a common, nonprofit purpose." *See* Tex. Bus. Orgs. Code § 252.001(2). In fact, the business organizations code specifically provides that a "nonprofit purpose" can include "operating on a nonprofit cooperative

7

basis for the benefit of its members." *Id.* § 2.002(4). Given that the business organizations code acknowledges that an association may have a nonprofit purpose even though it operates on a cooperative basis for the benefit of members, we conclude that, for the purposes of chapter 252, an association is not automatically for-profit merely because it distributes revenue to its members.

This interpretation is consistent with the official comments to UUNAA, which state:

> "Nonprofit" is not defined. A common definition—it is an association whose net gains do not inure to the benefit of its members and which makes no distribution to its members, except on dissolution—*does not work for all nonprofit associations*. Consumer cooperatives, for example, make distributions to their members; but they are not for-profit organizations. Those consumer cooperatives not organized under specific state or federal laws need the benefits of this Act.

*Unif. Unincorporated Nonprofit Ass'n Act* § 1, cmt. 9 (amended 2006), 6B U.L.A. 718 (2008) (emphasis added). Like the consumer cooperatives described in the above comment, the WCCBA presumably distributes proceeds from its charitable bingo operations to its members—all of which are nonprofit organizations with a charitable purpose. *See id.* The mere fact that the WCCBA distributes revenue to its nonprofit members does not make it a for-profit organization under chapter 252. *See Fetter*, 110 S.W.3d at 687 (noting that courts presume legislature considered official comments when adopting uniform codes). Therefore, even if MT Falkin is correct that the WCCBA does not squarely fit within the definition of a "nonprofit organization" under the occupations code for purposes of licensing for bingo operations, the WCCBA may nevertheless qualify as a "nonprofit association" under the business organizations code—for liability purposes—if it is

organized for the common, nonprofit purpose of raising money for its members' respective charities. *See* Tex. Bus. Orgs. Code Ann. §§ 2.002(4), 252.001(2).

MT Falkin also argues that the WCCBA has many of the characteristics that would indicate the formation of a partnership. *See id.* § 152.052(a) (listing factors that indicate creation of partnership). In particular, MT Falkin notes that its summary judgment evidence shows that (1) the WCCBA members have the right to receive shares of the proceeds of the WCCBA's operations, (2) Chisholm Trail referred to the WCCBA members as partners, (3) the members agreed to share in the WCCBA's losses, and (4) the members agreed to share the cost of operating the bingo hall. See id. § 152.052(a)(1), (2), (4)(A), (5); *see also Ingram v. Deere*, 288 S.W.3d 886, 899–900 (Tex. 2009) (noting that courts consider "putative partners' speech, writings, and conduct" to determine if putative partners intended to form partnership). Therefore, according to MT Falkin, there is still a fact issue about whether the WCCBA is a partnership subject to chapter 152 of the business organizations code.

The fact that the WCCBA exhibits some characteristics of a partnership is common among unincorporated nonprofit associations. As the supreme court has noted, "[u]nincorporated associations long have been a problem for the law. They are analogous to partnerships, and yet not partnerships; analogous to corporations, and yet not corporations; analogous to joint tenancies, and yet not joint tenancies; analogous to mutual agencies, and yet not mutual agencies." *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 n.3 (Tex. 1992). Chisholm Trail's undisputed evidence—including the WCCBA Articles—demonstrates that the WCCBA was formed and

operated for the purpose of conducting charitable bingo to raise revenue for its member-charities.[4]

Therefore, the summary-judgment evidence establishes that the WCCBA operated for a common, nonprofit purpose and thus is an unincorporated nonprofit association as defined by chapter 252 of the business organizations code. MT Falkin's argument that the WCCBA has many of the characteristics of a partnership—and therefore could also be classified as a partnership—is without merit insofar as establishing that MT Falkin's liability could be determined under chapter 152. *See* Tex. Bus. Orgs. Code Ann. § 252.017 (noting that only chapter 252 governs unincorporated nonprofit associations); *see also* § 152.051(c)(1) (noting that association is not partnership if created under statute other than chapter 152). Because the WCCBA qualifies as an unincorporated nonprofit association, it is governed solely by chapter 252.

On this record, we cannot conclude that the trial court erred in applying chapter 252 to the WCCBA and its members. We overrule MT Falkin's third and fourth appellate issues, and now turn to whether Chisholm Trail is nevertheless liable under the WCCBA's contract with MT Falkin.

**Did TUUNAA abrogate the common law?**

In its first and second issues on appeal, MT Falkin asserts that even if chapter 252 applies to the WCCBA, the trial court erred in concluding that Chisholm Trail is not liable for the WCCBA's breach of the Lease Agreement. Specifically, MT Falkin argues that section 252.006(b) of the business organizations code did not abrogate the common-law rule that a member of an

---

[4] It is not entirely clear from the record or the briefing whether the WCCBA itself conducts bingo operations or the WCCBA members conduct bingo operations and then pool their revenue. This distinction is irrelevant, however, because the record still supports the fact that the WCCBA serves the common nonprofit purpose of raising money for its member-charities.

unincorporated nonprofit association could be liable for the association's actions if the member authorized or ratified those actions. Thus, according to MT Falkin, the trial court erred in granting summary judgment in favor of Chisholm Trail because there is a fact issue about whether Chisholm Trail authorized or ratified the Lease Agreement. Whether TUUNAA abrogated the common-law rule of member liability is a question of law that we review de novo.

Prior to the adoption of TUUNAA, unincorporated nonprofit associations "were not considered separate legal entities and had no existence apart from their individual members."[5] *Cox*, 836 S.W.2d at 169–70. Because an unincorporated association had no separate legal identity, an individual was not personally liable for the association's debts "merely because of his status as a member or officer of the association." *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1284 (5th Cir. 1994); *see also Juhl v. Airington*, 936 S.W.2d 640, 642–43 (Tex. 1996) (applying pre-TUUNAA common law where underlying action commenced before TUUNAA's adoption); *Cox*, 836 S.W.2d at 170. Rather, the common law treated a member of an unincorporated nonprofit association "as though he were a principal and the association were his [putative] agent." *See Karl Rove & Co.*, 39 F.3d at 1285. Therefore, although members of a nonprofit association were not automatically

---

[5] This general principle was changing, to a certain extent, in the years leading up to TUUNAA's adoption. *See Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 171 (Tex. 1992) (noting that by statute, members of unincorporated association could sue or be sued under association's name, giving association some characteristics of legal entity). However, given that members of unincorporated associations could still be liable for the association's actions, it is clear that the common law did not treat unincorporated associations as completely separate legal entities. *See Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1285 (5th Cir. 1994) (noting disconnect between entity theory for unincorporated association and continuing common-law rule that members are liable if they ratify association's actions); 20 Robert W. Hamilton et al., *Texas Practice Series: Business Organizations* § 25.8 (3d ed. 2011).

11

liable for an association's actions, a member would be vicariously liable if the member authorized or ratified those actions. *See Juhl*, 936 S.W.2d at 643 (concluding protestors were not vicariously liable for injury caused by one protestor merely because they participated in same protest); s*ee also Karl Rove & Co.*, 39 F.3d at 1287–88 (concluding senatorial candidate was personally liable for contracts of his campaign committee when he assented to those contracts). These cases predated the legislature's adoption of TUUNAA.

Under TUUNAA, a "nonprofit association is a legal entity separate from its members for the purposes of determining and enforcing rights, duties, and liabilities in contract and tort." Tex. Bus. Orgs. Code Ann. § 252.006(a). "A person is not liable for a breach of a nonprofit association's contract . . . merely because the person is a member, is authorized to participate in the management of the affairs of the nonprofit association, or is a person considered as a member by the nonprofit association." *Id.* § 252.006(b).

As the official comments to UUNAA's limited-liability provision make clear, "[b]ecause a nonprofit association is made a separate legal entity, its members are not co-principals. Consequently they are not liable on the contracts or for torts for which the association is liable. Subsection (b) specifies that result with respect to contracts." *Unif. Unincorporated Nonprofit Ass'n Act* § 6, cmt. 3 (amended 2006), 6B U.L.A. 729 (2008); *see also* § 1, cmt. 1 (amended 2006) 6B U.L.A. 716 (2008) ("This broad definition of member ensures that the insulation from liability is provided in all cases in which the common law might have imposed liability on a person, simply because the person was a member."). Therefore, although both TUUNAA and the common-law state that a member of a nonprofit association is not liable for the association's contracts merely because

he is a member, "merely" means something substantially different under TUUNAA. Under the common law, a person could not be liable merely as a member of a nonprofit association because the association was not a distinct legal entity, and thus there was no means to impute the association's actions to the member unless the member ratified those actions. *See Cox*, 836 S.W.2d at 169–70. By contrast, a person or entity is not liable under TUUNAA merely as a member of an association because the association is a distinct entity, and thus its members and agents are not liable under any theory of vicarious liability.[6] *See Unif. Unincorporated Nonprofit Ass'n Act* § 6, cmt. 6, 6B U.L.A. 729 (explaining that within subsection (b), "merely" means person cannot be vicariously liable as an association member, but may be personally liable if person guaranteed contract, were liable under other agency law, or court "pierces the veil" of association).

It appears that only two courts have addressed this issue, but both of those courts have reached our same conclusion—UUNAA did abrogate the common law.[7] *See Izen v. Sjostrom*, No. 14-06-00142-CV, 2007 WL 968841, at *5 (Tex. App.—Houston [14th Dist.] Apr. 3, 2007, no pet.) (mem. op.); *Mohr v. Kelley*, 8 P.3d 543, 545–46 (Colo. App. 2000). In *Izen*, the trial court

---

[6] MT Falkin cites to oral comments made by legislators during TUUNAA's adoption which indicate that certain legislators did not believe TUUNAA would change the common law. *See* The Texas Uniform Unincorporated Nonprofit Associations Act: Hearings on Tex. H.B. 166 Before the House Comm. On Bus. & Indus., 74th Leg., R.S. (Mar. 7, 1995) (statement of Representative Sylvester Turner) (tape available from Office of the House Committee Coordinator). However, these comments indicate either that the legislators misunderstood what the common law concerning nonprofit associations was or misunderstood when a person could be liable for the actions of another. In any event, these comments are wholly inconsistent with the language of TUUNAA and the Official Comments to UUNAA. *See* Tex. Bus. Orgs. Code Ann. §§ 252.001–.017 (West 2012); *Unif. Unincorporated Nonprofit Ass'n Act* § 6, cmt. 3 (amended 2006), 6B U.L.A. 729 (2008).

[7] The dearth of case law may be attributable to the fact that only twelve states and the District of Columbia have adopted UUNAA.

13

awarded summary judgment in favor of a former employee of a legal defense fund who sued the fund and one of its trustees for unpaid wages. 2007 WL 968841, at *1. The former employee alleged that the trustee was a member of the defense fund and thus was liable for the fund's "contracts because all members of an unincorporated association are liable for its contracts." *Id.* at *5. Our sister court reversed the trial court's summary judgment in favor of the former employee, holding that "[t]he recently passed TUUNAA changes the common law rule in stating that a person is not liable for the contracts of the nonprofit association merely because that person is a member or a person authorized to participate in the management of the association's affairs."[8] *Id.*

Similarly in *Mohr*, a Colorado appellate court addressed whether a candidate could be liable for the employment contracts of his campaign committee. 8 P.3d at 544–45. In interpreting Colorado's version of UUNAA, the court noted that UUNAA "substantially changes the law with respect to unincorporated non-profit associations" by making them separate legal entities "more in the nature of corporations, limited partnerships, or limited liability companies." *Id.* at 545. Therefore, relying on the same official comments to UUNAA discussed above, the Colorado appellate court concluded that the candidate could not be liable for his campaign's contracts even though he was a member of the campaign, managed the campaign, and negotiated the employment contracts at issue. *Compare id.* at 545–46, *with Karl Rove & Co.*, 39 F.3d at 1284 (concluding that under pre-TUUNAA Texas common law, candidate liable for campaign's contracts when candidate authorized contracts).

---

[8] Although the memorandum opinion did not analyze how TUUNAA changed the common law, the opinion can be read as further support for this Court's interpretation. *Izen v. Sjostrom*, No. 14-06-00142-CV, 2007 WL 968841, at *5 (Tex. App.—Houston [14th Dist.] Apr. 3, 2007, no pet.) (mem. op.).

Furthermore, our interpretation is consistent with that of commentators who have analyzed member liability under UUNAA. *See* 20 Robert W. Hamilton et al., *Texas Practice Series: Business Organizations* § 25.8 (3d ed. 2011); Elizabeth S. Miller, *Doctoring the Law of Nonprofit Associations with a Band-aid or a Body Cast: A Look at the 1996 and 2008 Uniform Unincorporated Nonprofit Association Acts*, 38 Wm. Mitchell L. Rev. 852, 865–66 (2012). As one author explained, "although [Texas's common-law] rule stopped short of imposing liability solely on the basis of one's status as a member, it appears to be inconsistent with the entity approach adopted by the TUUNAA and presumably is no longer the law." 20 Robert W. Hamilton et al., *Texas Practice Series: Business Organizations* § 25.8.

Therefore, while a member of a nonprofit association who ratified the association's actions could be liable under the common law, such liability is not appropriate under TUUNAA. We conclude that TUUNAA abrogated the common law and, under section 252.006, Chisholm Trail cannot be liable for the actions of the WCCBA merely because Chisholm Trail allegedly assented to or ratified the Lease Agreement. Therefore, we need not reach MT Falkin's argument that there is a fact issue about whether Chisholm Trail authorized or ratified the Lease Agreement.[9] The trial

---

[9] MT Falkin contends that the WCCBA Articles, communications from Chisholm Trail, and signed acknowledgments by other WCCBA members demonstrate that the WCCBA members intended to be jointly and severally liable for the WCCBA's operations, particularly with regard to the Lease Agreement. This appears to be parole evidence of the parties' intent prior to entering into the written contract, which a court would generally not consider unless the contract is ambiguous. *See Kendrioski v. Saunders*, 191 S.W.3d 395, 405 (Tex. App.—Austin 2006, no pet.) (discussing parole evidence concerning unambiguous written surety agreement). MT Falkin does not assert that the Lease Agreement is ambiguous, and there is nothing within the four corners of the Lease Agreement to suggest that the WCCBA members were liable for the lease. *Id.* (noting parole evidence cannot "create an ambiguity in an otherwise unambiguous agreement"). Therefore, neither the trial court nor this Court is able to consider this evidence to alter the terms of the lease.

court did not err in granting Chisholm Trail summary judgment on this basis. We overrule MT

Falkin's first and second appellate issues.[10]

## CONCLUSION

We affirm the trial court's final summary judgment in favor of Chisholm Trail.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: May 2, 2013

---

[10] Having concluded that Chisholm Trail is entitled to summary judgment because it is not liable for the debts of the WCCBA, we need not determine whether res judicata also bars MT Falkin's claims against Chisholm Trail. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (noting appellate court will affirm trial court's summary-judgment ruling if any summary judgment ground supports it); *see also* Tex. R. App. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal).

16