**Affirmed and Opinion filed August 7, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00046-CV

---

## GORDON WESTERGREN, SANDY WESTERGREN, RICHARD HELMLE, CAROLE HELMLE, CHRIS MILLER, KIMBERLY MILLER, PETER SUNDT, AND BRIAN JOHNSON, Appellants

### V.

### HOUSTON PILOTS ASSOCIATION, Appellee

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2015-25755A**

---

## O P I N I O N

In this appeal from a summary judgment, we address whether appellee Houston Pilots Association is entitled to immunity from liability under federal maritime law or Texas statutory law for claims arising from the collision of two vessels on the Houston Ship Channel. At the time of the collision, two members of Houston Pilots were piloting the vessels in heavy fog near Morgan's Point.

Appellants, homeowners living near the site, allege that the collision released 88,200 gallons of methyl tertiary butyl ether (MTBE), causing environmental damage to their property and sickening two of them. Appellants contend that Houston Pilots' alleged negligence was a cause of the collision because the association failed to train and supervise the pilots, and it undertook to implement navigation standards but failed to do so.

The Houston Pilots Licensing and Regulatory Act provides that a pilot is not liable, either directly or as a member of an organization of pilots, for any claim that (1) arises from an act or omission of another pilot or organization of pilots, and (2) relates directly or indirectly to pilot services. Tex. Transp. Code Ann. § 66.082 (West 2011). We conclude that section 66.082, rather than federal maritime law, governs the claims asserted by appellants and provides Houston Pilots immunity from liability. We therefore affirm the trial court's summary judgment.

## BACKGROUND

The Houston Ship Channel stretches approximately 55 nautical miles from the sea buoy offshore Galveston to the turning basin at the Port of Houston. The main channel is 530 feet wide. Maneuvering vessels in and out of the ship channel requires special expertise and knowledge due to the channel's size and the number of vessels traversing its waterways. Houston Pilots[1] is an association that provides compulsory pilots to guide vessels in and out of the ship channel.[2] The job of a Houston pilot is to bring the vessel from the sea to the dock, or vice versa, as safely

---

[1] Appellants refer to appellee as Houston Pilots Association, though appellee states in its brief that its correct name is Houston Pilots.

[2] Certain vessels are required by law to obtain pilot services into and out of the Port of Houston. Tex. Transp. Code § 66.069.

as possible.[3]

On March 9, 2015, Captain Larry Evans piloted the M/T *Carla Maersk* outbound, while Captain George Reeser piloted the M/V *Conti Peridot* inbound up the ship channel. When heavy fog rolled in and reduced visibility significantly, Houston Pilots suspended pilot boardings of inbound ships. But vessels already under way, like the *Carla Maersk* and the *Conti Peridot*, continued on. As the *Carla Maersk* and the *Conti Peridot* neared each other just south of Morgan's Point, the *Conti Peridot* crossed the channel into the path of the *Carla Maersk* and the two collided. As a result of the collision, MTBE spilled from the cargo of the *Carla Maersk*. Appellants (the Homeowners) contend that the spill reached their properties, requiring a significant amount of remediation and causing personal injury to two of them.

The Homeowners sued Houston Pilots and others, asserting claims under Texas law for negligence, gross negligence, negligent trespass, and private nuisance.[4] With regard to Houston Pilots, the Homeowners alleged that the association was negligent in multiple respects that caused the collision, including that it negligently failed to develop and promulgate navigational standards in the ship channel and failed to train and supervise the individual pilots navigating the vessels.

Houston Pilots moved for traditional summary judgment on two grounds.

---

[3] Pilots have long occupied a unique place in maritime history. As one commentator described: "For as long as men have taken to the sea, pilots have guided their journeys. Pilots were known to antiquity, and rules for their conduct were provided as early as Roman times and the Middle Ages. The first instance of mandatory pilotage was probably made in the Ordonances de Wisbuy . . . in the twelfth century." David J. Bederman*, Compulsory Pilotage, Public Policy, and the Early Private International Law of Torts*, 64 TUL. LAW REV. 1033, 1041 (1990).

[4] In their petition, the Homeowners specifically disclaimed seeking any relief under federal law.

First, it contended that under federal maritime law as set forth in *Guy v. Donald*, 203 U.S. 399 (1906) and its progeny, pilot associations are immune from vicarious liability or direct liability related to the alleged negligence of its pilots. Second, Houston Pilots argued that as an unincorporated association of independent contractor pilots, it has no legal existence separate from its individual pilots. As a result, any judgment against it for its own negligence would in effect be a judgment against the individual pilots jointly and severally, triggering the immunity the Legislature provided to pilots in section 66.082 of the Transportation Code.

The Homeowners responded to the motion, arguing that the rule set forth in *Guy v. Donald* and its progeny did not insulate Houston Pilots from liability for its own direct negligence. The Homeowners further argued that section 66.082 did not provide immunity because a fact issue exists regarding whether Houston Pilots is an unincorporated association or a general partnership under Texas law. Each side raised objections to the other side's evidence, though the trial court did not rule on the objections. The trial court granted Houston Pilots' motion without stating the grounds for its decision. The trial court then severed the claims against Houston Pilots, making the summary judgment final. This appeal followed.

## ANALYSIS

The Homeowners raise two issues on appeal: (1) whether Texas law provides complete immunity to pilot associations for the direct negligence of the organization itself; and (2) whether a genuine issue of material fact exists as to Houston Pilots' status as a partnership under Texas law and, if so, whether Houston Pilots may be held vicariously liable for the actions of its member pilots. We address these issues together.

4

## I. Standard of review

We review a trial court's order granting a traditional summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If the trial court grants summary judgment without specifying the grounds, we affirm the judgment if any of the grounds presented are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

To prevail on a traditional motion for summary judgment, the movant has the burden of establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To be entitled to traditional summary judgment, the defendant must conclusively negate at least one element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Dias*, 214 S.W.3d at 676. Once the defendant establishes its right to summary judgment, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Id.*

In this case, Houston Pilots moved for summary judgment on its affirmative defense of immunity from liability. To establish its right to summary judgment on its affirmative defense, Houston Pilots bore the burden of pleading and conclusively establishing each element of its immunity defense. *See Haver v. Coats*, 491 S.W.3d 877, 881, 883 (Tex. App.—Houston [14th Dist.] 2016, no pet.). As noted above, in support of its motion for summary judgment, Houston Pilots cited two bases for immunity: the federal rule of *Guy v. Donald*, 203 U.S. 399 (1906), and section

66.082 of the Texas Transportation Code. We begin by explaining each source of immunity and then address which rule is relevant here.

## II. Pilot associations have different immunities under federal maritime and Texas statutory law.

In *Guy v. Donald*, the Supreme Court of the United States established a general rule that pilot associations and member pilots are immune from vicarious liability under federal maritime law for negligent acts or omissions by other member pilots. 203 U.S. at 404; *see also Dampskibsselskabet Atalanta A/S v. United States*, 31 F.2d 961, 962 (5th Cir. 1929). In *Dampskibsselskabet Atalanta*, the Fifth Circuit explained the rationale for this rule:

> The fundamental principle underlying the exemption of pilots' associations from liability for negligence of their members in performing their duties as pilots is that the association exercises no control over the manner in which those duties are to be performed, and therefore a pilot cannot be said to be an agent of the association in that respect.

31 F.2d at 962. Courts have long applied the *Guy* rule to afford immunity from liability to pilot associations.[5] Even if an association has the ability to select, discharge, and discipline its members, this general control over a pilot does not defeat the *Guy* rule. "To be liable, the association must control the pilot's actions while [the pilot is] discharging his professional duties onboard the vessel." *In re*

---

[5] *See, e.g.*, *McGrath v. Nolan*, 83 F.2d 746, 750 (9th Cir. 1936); *Dampskibsselskabet Atalanta*, 31 F.2d at 962; *J.W. Westcott Co.*, 333 F. Supp. 2d at 606; *In re Lloyd's Leasing, Ltd.*, 764 F. Supp. 1114, 1139 (S.D. Tex. 1990), *aff'd sub nom. Lloyd's Leasing v. Bates*, 902 F.2d 368 (5th Cir. 1990); *McKeithen v. The S.S. Frosta*, 441 F. Supp. 1213, 1220 (E.D. La. 1977); *In re China Union Lines, Ltd*, 342 F. Supp. 426, 431 (E.D. La. 1971); *see also* THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 13-5 p. 96 (5th ed. 2011) ("The well-established rule is that pilot associations are immune to vicarious liability for the torts of their members. . . . . Pilots' associations are also not liable for negligently assuring the competence of their members because as professional associations they make no guarantee of the professional conduct of their members to the general public.").

6

*J.W. Westcott Co.*, 333 F. Supp. 2d 604, 606 (E.D. Mich. 2003).

The Texas Legislature has likewise provided immunity for claims relating to pilot services along the Houston Ship Channel, though the contours of this immunity differ from the *Guy* rule. The Houston Pilots Licensing and Regulatory Act provides:

> A pilot is not liable directly or as a member of an organization of pilots for any claim that:
>
> (1)    arises from an act or omission of another pilot or organization of pilots; and
>
> (2)    relates directly or indirectly to pilot services.

Tex. Transp. Code § 66.082.[6] The Act defines pilot services as "acts of a pilot in conducting a vessel through the navigable water in this state and the ports in which the pilot is licensed or certified as a pilot." Tex. Transp. Code § 66.002(6). The Legislature expressly stated that the purpose of the Act is to "(1) in the public interest, stimulate and preserve maritime commerce on the pilotage grounds of this state by limiting and regulating the liability of pilots; and (2) maintain pilotage fees at reasonable amounts." Tex. Transp. Code § 66.081.

## III.    Texas statutory law, rather than federal maritime law, provides the rule of immunity here.

Initially, we must decide whether to use federal maritime or Texas statutory law in determining whether Houston Pilots is immune from liability for the claims at issue. We begin with the premise that torts occurring on navigable waters of the United States fall generally within the law of admiralty; thus, "[a]bsent a relevant

---

[6] The Legislature enacted similar immunity statutes for pilots working in Galveston, Brazoria County, Jefferson and Orange County, and Corpus Christi. *See* Tex. Transp. Code §§ 67.082, 68.082, 69.082, 70.082.

statute, the general maritime law, as developed by the judiciary, applies." *East River S.S. Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 865 (1986); *see also Schlumberger Tech. Corp. v. Arthey*, 435 S.W.3d 250, 253 (Tex. 2014) (test for whether admiralty law applies focuses on both location and connection with maritime activity).

But this case also involves the unique area of pilotage. "Pilotage is the art of navigating ships into and out of ports or along rivers, bays, harbors and other special waters." *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 136 (2d Cir. 1994). When it passed the Lighthouse Act of 1789, the first Congress determined that pre-existing state pilotage laws were satisfactory, making federal regulation of pilotage unnecessary. *Kotch v. Bd. of River Port Pilot Com'rs for Port of New Orleans*, 330 U.S. 552, 559 (1947); *Anderson v. Pac. Coast S.S. Co.*, 225 U.S. 187, 195 (1912). Thus, States retain their sovereign authority to regulate pilotage where Congress has not acted to displace their laws. *See Olsen v. Smith*, 195 U.S. 332, 341 (1904) ("[A]lthough state laws concerning pilotage are regulations of commerce, 'they fall within that class of powers which may be exercised by the states until Congress has seen fit to act upon the subject.'"); *Cooley v. Bd. of Wardens of Port of Philadelphia ex rel. Soc. for Relief of Distressed Pilots*, 53 U.S. (12 How.) 299, 320 (1852) ("[T]he mere grant to Congress of the power to regulate commerce, did not deprive the states of power to regulate pilots, and . . . although Congress has legislated on this subject, its legislation manifests an intention, with a single exception, not to regulate this subject, but to leave its regulation to the several states."); *Gillis v. Louisiana*, 294 F.3d 755, 762 (5th Cir. 2010).

In 1983, Congress enacted a statute that provides: "pilots in the bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the States." 46 U.S.C. § 8501(a). Section 8501 expresses Congress's

8

continuing intent not to limit States' authority to regulate pilotage unless another federal statute provides otherwise. *See Gillis*, 294 F.3d at 761. To date, Congress has preempted state regulation of pilotage in two instances: (1) with respect to vessels on the Great Lakes, 46 U.S.C. § 9302; and (2) with respect to American-flagged vessels sailing between American ports, 46 U.S.C. § 8502. *See Sammis*, 14 F.3d at 136; *Continental Ins. Co. v. Cota*, No. 08-2052-SC, 2010 WL 383367, at *4 (N.D. Cal. Jan. 27, 2010).[7] Neither instance is present in this case.

In post-submission briefing, Houston Pilots argues that federal maritime law governs and that section 66.082 simply supplements that law. We disagree. Regulation of pilotage on the Houston Ship Channel is expressly left to the State. *See* 46 U.S.C. § 8501(a). Texas has enacted a relevant statute. We therefore apply the language of that statute to the Homeowners' claims. *See East River S.S. Corp.*, 476 U.S. at 864 (holding general maritime law applies "absent a relevant statute"); *Continental Ins. Co.*, 2010 WL 383367, at *5 (holding California statute requiring shipowners who do not purchase trip insurance to defend, indemnify, and hold harmless compulsory pilots applied and was not preempted by general maritime law).

## IV. Houston Pilots is immune from liability for the Homeowners' claims under section 66.082.

Section 66.082 provides that a pilot is not liable "directly or as a member of an organization of pilots" for any claim "aris[ing] from an act or omission of another pilot or organization of pilots" that "relates directly or indirectly to pilot services." Tex. Transp. Code § 66.082(1), (2). Neither party has cited, nor has our research revealed, any decisions construing section 66.082. Thus, as a matter of first

---

[7] *See generally* Paul G. Kirchner & Clayton L. Diamond, *Unique Institutions, Indispensible Cogs, and Hoary Figures: Understanding Pilotage Regulations in the United States*, 23 U.S.F. MAR. L.J. 168, 176 (2011).

9

impression, we consider: (1) whether imposing liability on Houston Pilots as an unincorporated association or partnership would hold "[a] pilot . . . liable . . . as a member of an organization of pilots"; and (2) whether the Homeowners' claims (a) arise from an act or omission of Houston Pilots or another pilot and (b) relate directly or indirectly to pilot services as defined in the Act.  Houston Pilots had the burden to prove each element of this immunity defense conclusively in order to obtain summary judgment, and we consider each element in turn.  *See Haver*, 491 S.W.3d at 881, 883.

Our task in construing statutes is to effectuate the Legislature's expressed intent, not to second-guess the policy choices it made or to weigh the effectiveness of their results.  *Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014).  We focus on the words of the statute, which best reveal legislative intent.  *Id.*  "Construing statutes as written is necessary to predictability in statutory interpretation and to validating the public's trust in and reliance on the words it reads in the statute books."  *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 779 (Tex. 2011).  We do not view words and phrases in isolation; rather we examine the entire act and, when possible, give effect to each sentence, phrase, clause and word used.  *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001).

## A.   A judgment against Houston Pilots would hold individual pilots liable members of an organization of pilots.

In its motion for summary judgment, Houston Pilots asserted it was entitled to immunity from liability under section 66.082 because it is an unincorporated association and, as such, "any judgment against Houston Pilots would in effect be a judgment against each and every member jointly and severally, and the satisfaction of such judgment would affect each member-pilot equally."  In response, the Homeowners assert that a factual dispute exists regarding whether Houston Pilots is

a general partnership rather than an unincorporated association. If Houston Pilots is a partnership, the Homeowners contend it may be sued in its own name and held liable separately from its partner pilots, and thus it is not protected by section 66.082. Given this factual dispute, the Homeowners assert that summary judgment is inappropriate.

We conclude that any factual dispute regarding partnership status is immaterial. The parties agree that Houston Pilots is either an unincorporated association or a general partnership. Regardless of which characterization is correct, the summary-judgment evidence conclusively proves that a judgment against Houston Pilots would result in liability for each of the individual pilots "as a member of an organization of pilots." Tex. Transp. Code § 66.082.

We begin our analysis of this element by addressing the scope of the summary judgment record. The Homeowners objected in the trial court that Houston Pilots completely failed to authenticate the exhibits to its motion for summary judgment, and they argue on appeal that those exhibits should not be considered. Assuming, without deciding, that the exhibits are not part of the summary judgment record, we may consider evidence submitted by the non-movants in reviewing the trial court's ruling granting traditional summary judgment. *See* Tex. R. Civ. P. 166a; *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, L.L.P.*, 499 S.W.3d 169, 177 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (holding appellate court may affirm traditional summary judgment if, after submission of evidence by non-movant, record establishes movant's right to traditional summary judgment even if movant's evidence, by itself, does not establish movant's right to traditional summary judgment).

Houston Pilots' recommended navigation safety guidelines, which are attached to the Homeowners' response, describe Houston Pilots as "[a]n

unincorporated association of persons licensed by the [S]tate of Texas and the United States Coast Guard to serve as ship Pilots on vessels that transit the Houston Ship Channel." "Historically, unincorporated associations were not considered separate legal entities and had no existence apart from their individual members." *Cox v. Thee Evergreen Church*, 836 S.W.2d 167, 169 (Tex. 1992). Although unincorporated associations may now sue and be sued in their own names,[8] article 6135 of the revised civil statutes provides that any judgment against such an association "shall be as conclusive on the . . . members thereof as if they were individually parties to [the] suit[]." Tex. Rev. Civ. Stat. Ann. art. 6135 (West 2010);[9] *see Holberg & Co. v. Citizens Nat'l Assurance Co.*, 856 S.W.2d 515, 517 (Tex. App.—Houston [1st Dist.] 1993, no writ) ("When an individual is doing business under an assumed name, a judgment rendered against the unincorporated association is binding on the individual.").[10]

Under this statute, a judgment holding the Houston Pilots Association liable on the Homeowners' claims would be conclusive on the individual member pilots as if they were parties. Furthermore, the Homeowners could immediately enforce such a judgment by execution against the joint property of the member pilots. Tex. Rev. Civ. Stat. art. 6136.[11] We therefore conclude that a judgment against Houston

---

[8] *See* Tex. Rev. Civ. Stat. Ann. art. 6133 (West 2010); Tex. R. Civ. P. 28.

[9] Non-profit associations are subject to different statutes not at issue here. Specifically, Chapter 252 of the Texas Business Organizations Code codifies the Texas Uniform Unincorporated Nonprofit Association Act, Texas's version of the Uniform Unincorporated Nonprofit Association Act. *See MT Falkin Invs., L.L.C. v. Chisholm Trail Elks Lodge No. 2659*, 400 S.W.3d 658, 661 (Tex. App.—Austin 2013, pet. denied).

[10] *See also Compass Bank v. Villarreal*, No. L-10-08, 2012 WL 13046324, at *6 (S.D. Tex. Feb. 28, 2012); *Long v. United Welding Supply, Inc.*, No. 01-03-0034-CV, 2006 WL 1428823, at *6 (Tex. App.—Houston [1st Dist.] May 25, 2006, no pet.); *Old Republic Ins. Co. v. EX-IM Servs. Corp.*, 920 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1996, no writ).

[11] To execute against the individual property of members, the Homeowners would have to serve those members, but the judgment against Houston Pilots would be conclusive as to the

12

Pilots as an unincorporated association would hold each pilot "liable . . . as a member of an organization of pilots." Tex. Transp. Code § 66.082.

According to the Homeowners, however, their response also includes evidence indicating that Houston Pilots is a general partnership. Under Texas law, "an association of two or more persons to carry on a business for profit as owners creates a partnership." *Ingram v. Deere*, 288 S.W.3d 886, 895 (Tex. 2009); *see* Tex. Bus. Orgs. Code Ann. § 152.051(b) (West 2012). Several factors can indicate the creation of a partnership, including the right to receive a share of profits and participation in or right to control the business. *See Ingram*, 288 S.W.3d at 895 (listing statutory factors to be considered). In support of their argument that a fact issue exists, the Homeowners cite testimony from Houston Pilots' representative and the two individual pilots involved in the collision explaining how tariffs for pilot services are collected and distributed. Specifically, the representative explained that a company called "Beatty Street" collects the tariffs, the tariffs are pooled, expenses for employees and maintenance are paid, and then any remainder is distributed on an equal basis to each full member of Houston Pilots. The members are also allowed to participate on committees, and as such make business decisions for the organization. The representative denied that the members are partners, instead insisting that each pilot is simply an independent contractor.

The Homeowners correctly point out that whether an arrangement is considered a partnership often presents a question of fact. *See Ingram*, 288 S.W.3d at 898 (noting difficulty in uniformly applying a "totality-of-the-circumstances" test for determining whether partnership exists). The Homeowners are also correct that under Texas partnership law, the partnership is a distinct entity that may be sued in

---

members' individual liability. *See* Tex. Rev. Civ. Stat. arts. 6135, 6137.

its own name without joinder of the partners. *See* Tex. Bus. Orgs. Code §§ 152.056, 152.305; *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 429 (Tex. 2015) ("As an independent entity, a partnership may enter into contracts in its own name, may own its own property, and may sue and be sued in its own name."). As discussed above, the same is true of an unincorporated association.

Yet, even if Houston Pilots were a general partnership, each individual partner pilot would be jointly and severally liable for a judgment against the partnership. In general, "all partners are jointly and severally liable for all obligations of the partnership." Tex. Bus. Orgs. Code § 152.304(a). "This personal liability, undoubtedly a[] . . . feature [of the aggregate theory of partnership], is a defining characteristic of the partnership form and distinguishes it from other entity types." *Am. Star Energy*, 457 S.W.3d at 429. In addition, a judgment creditor of a general partnership can immediately enforce that judgment by execution against the joint property of the partners and, in some circumstances, can also execute against the individual property of partners without first seeking satisfaction from partnership property. *Id*. at 429–430 & n.2; *see* Tex. Bus. Orgs. Code §§ 152.306(b)–(c).[12] For these reasons, a judgment against Houston Pilots as a general partnership would likewise hold each partner pilot "liable . . . as a member of an organization of pilots"—a result the Legislature has prohibited. Tex. Transp. Code § 66.082.

The Homeowners cite *Houston Pilots v. Goodwin* for the proposition that an association can be held liable separately from its members, especially when the association is a general partnership. 178 S.W.2d 308 (Tex. App.—Galveston 1944, writ dism'd). In *Goodwin*, members of a Galveston pilots' association sued Houston

---

[12] As with an unincorporated association, a judgment creditor of a partnership cannot execute against the individual property of partners without serving them. Tex. Bus. Orgs. Code § 152.306(a). But the judgment against the partnership generally is conclusive of the individual partners' joint and several liability. *Id.* § 152.304(a).

Pilots and its individual member pilots for collecting pilotage fees on vessels that entered Bolivar Roads and, after anchoring there, put back to sea without proceeding to the Port of Houston. *Id.* at 309.[13] Houston Pilots and its members filed pleas of privilege challenging venue in Galveston County, which the trial court overruled. Houston Pilots and its members appealed, and the court of appeals affirmed.

In the course of analyzing venue as to Houston Pilots, the court of appeals determined an inference was warranted that the tort "was committed [in Galveston County] by each pilot not only on behalf of himself, but for the joint account of each member of the association and so accepted and ratified." *Id.* at 314. The court concluded that Houston Pilots was an unincorporated association and liable as a principal for the tortious invasion of the Galveston pilots' right of pilotage. *Id*.

We agree that Houston Pilots as an unincorporated association or partnership can be sued separately from its individual member or partner pilots.[14] But we do not agree with the Homeowners that holding Houston Pilots liable would have no effect on the pilots. The *Goodwin* decision, issued long before the Legislature enacted section 66.082, does not address that issue. As we have explained, a judgment against Houston Pilots as an unincorporated association or a general partnership would also impose liability on the pilots as members or partners. Accordingly, the summary-judgment evidence conclusively proved this element of the statutory defense.

---

[13] Bolivar Roads is a "roadstead or protected anchorage inside the harbor lines of Galveston Harbor." *Goodwin*, 178 S.W.2d at 309. In 1942, due to World War II, ships anchored in Bolivar Roads for safety or to be put into convoys. *Id.*

[14] *See, e.g.*, Tex. Bus. Orgs. Code §§ 152.056, 152.305; Tex. Rev. Civ. Stat. art. 6133; *Smith v. Houston Pilots*, No. H-13-0565, 2014 WL 3534695, at *4 (S.D. Tex. July 16, 2014) (suit involving claims by individual pilot against association for personal expenses pilot had to pay to association that he claimed were "double-dipping").

**B.      The Homeowners' claims arise from alleged acts or omissions of other pilots or of an organization of pilots.**

We also conclude that as a matter of law the Homeowners' claims arise from "an act or omission of another pilot or an organization of pilots." Tex. Transp. Code § 66.082(1). The Homeowners pleaded claims of negligence, gross negligence, trespass, and private nuisance due to Houston Pilots' alleged failure to, among other things: (1) utilize reasonable care in undertaking and carrying out the development and promulgation of navigation standards in the Houston Ship Channel; (2) utilize reasonable care in training and supervising the individual pilots; (3) properly operate the Carla Maersk and the Conti Peridot; (4) properly operate the two vessels in a manner that the collision would not occur; and (5) properly inspect the vessel to assure equipment and personnel were fit. As pleaded, these claims seek to hold Houston Pilots vicariously liable for acts or omissions of its member pilots who operated the vessels as well as directly liable for its own acts or omissions as an organization of pilots.

The Homeowners contend that section 66.082 is best understood as a codification of *Guy v. Donald* that applies only to "vicarious liability of pilots, whether individually or as a member of an association of pilots, for the acts of another pilot." But the Homeowners' reading of the statute does not give effect to the second part of section 66.082(1), which grants immunity from liability for any claim that "arises from an act or omission of another pilot *or organization of pilots.*" Tex. Transp. Code § 66.082(1) (emphasis added). We construe the words act or omission "of an organization of pilots" to encompass allegations that Houston Pilots as an organization did not, for example, use reasonable care in developing navigation standards or in training and supervising individual pilots. *See Meritor Automotive*, 44 S.W.3d at 90 (when possible, court should construe statute to give effect to each sentence, phrase, clause, and word used).

16

## C. The Homeowners' claims relate to pilot services.

Finally, as a matter of law the Homeowners' claims "relate[] directly or indirectly to pilot services" as required by section 66.082(2). "Pilot services" are "acts of a pilot in conducting a vessel through the navigable water . . . and the ports in which the pilot is licensed . . . ." Tex. Transp. Code § 66.002(6). The Homeowners' petition shows that they seek to hold Houston Pilots liable for acts and omissions regarding vessel travel through the Houston Ship Channel. They argue that these alleged acts and omissions are not in fact pilot services because the "act of a pilot in conducting a vessel through navigable waters is altogether separate and apart from formulating and implementing 'predetermined ship movement strategies.'" We disagree. The statute applies to acts or omissions that relate "directly or indirectly" to pilot services. Tex. Transp. Code § 66.082(2). Formulating and implementing ship movement strategies for pilots' use in the navigable waters of this State, including the Port of Houston, relates at least indirectly to "the acts of a pilot in conducting a vessel through" those waters. Tex. Transp. Code § 66.002(6).

Because the Homeowners have asserted claims described in section 66.082(1) and (2) and those claims, if successful, would result in individual pilots being liable as members of Houston Pilots, the trial court properly granted summary judgment in favor of Houston Pilots on its affirmative defense of immunity from liability.[15]

---

[15] In its briefing on appeal and at oral argument, Houston Pilots asserts that it cannot be held liable for the direct negligence claims asserted by the Homeowners in this case because it has no duty to promulgate navigation standards for the Houston Ship Channel or to oversee and train individual pilots. We do not address this argument for two reasons. First, Houston Pilots did not move for summary judgment on the ground that it owed no duty to the Homeowners and we cannot affirm a grant of summary judgment on a ground not included in the motion. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("When reviewing a summary judgment motion, we cannot read between the lines or infer from the pleadings or evidence any grounds for summary judgment other than those expressly set forth before the trial court."). Second, on these facts,

We overrule the Homeowners' first and second issues.

## CONCLUSION

Having overruled each of the Homeowners' issues on appeal, we affirm the trial court's summary judgment in favor of Houston Pilots.


/s/    J. Brett Busby
           Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise.

---

section 66.082 provides immunity for the acts and omissions of the organization itself as discussed above. We therefore need not reach the question of duty.